UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NEW YORK PACKAGING II LLC d/b/a
REDIBAG USA,

Plaintiff,

v.

MUSTANG MARKETING GROUP LLC and
JOHN MAIERHOFFER,

Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-1629 (MKB)

I. Background ... 4

a. Factual background ... 4
b. Plaintiff's allegations ... 8
i. The state court actions ... 8
ii. The current action ... 13

II. Discussion ... 14

a. Standards of review ... 14
i. Rule 702 – Motion to strike expert report and preclude expert testimony ... 14
ii. Rule 56 – Summary Judgment ... 18
iii. Rule 11 – Sanctions ... 20
b. Defendants' motion to strike the report and proposed testimony of Plaintiff's experts ... 22
i. The Court declines to strike Christopher L. Picone's report and preclude his testimony 22
ii. The Court strikes Glen Balzer's report and precludes him from testifying as an expert 39
c. The Court grants in part and denies in part Defendants' motion for summary judgment 43
i. *Res judicata* ... 43
ii. Alleged alternative reasons to dismiss Plaintiff's claims ... 47
iii. Alter ego claim ... 92
d. Rule 11 sanctions ... 98

III. Conclusion ... 100

MARGO K. BRODIE, United States District Judge:

Plaintiff New York Packaging II LLC, doing business as RediBag USA, commenced the above-captioned action on March 26, 2021, against Defendants Mustang Marketing Group LLC ("Mustang") and John Maierhoffer, alleging a federal claim for (1) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") and state law claims for (2) misappropriation of trade secrets, (3) breach of contract, (4) tortious interference with prospective business relations, (5) breach of fiduciary duty, (6) negligence, (7) faithless servant, and (8) unjust enrichment. Plaintiff seeks a declaratory judgment, injunctive relief, damages and attorneys' fees and costs. (Compl. ¶¶ 100–81, Docket Entry No. 1.)

On June 2, 2025, Plaintiff filed a motion *in limine* to exclude evidence that (1) products from one of its competitors, Trinity Plastics, are not competing products and (2) sales in Plaintiff's industry "generally are the result of a competitive bidding process," which Defendants oppose.[1] On July 16, 2025, Plaintiff filed a motion for leave to file a supplemental Rule 56.1 statement.[2] On July 30, 2025, Defendants filed a motion for summary judgment, seeking

[1] (Pl.'s Mot. in Limine, Docket Entry No. 119; Defs.' Opp'n to Pl.'s Mot. in Limine, Docket Entry No. 120; Pl.'s Reply in Supp. of Pl.'s Mot. in Limine, Docket Entry No. 121.)

[2] (Pl.'s Mot. for Supp. 56.1 Stmt., Docket Entry No. 123.) Plaintiff requests leave to file a supplemental 56.1 statement by pointing to Defendants filing a reply 56.1 statement, which Plaintiff alleges is impermissible pursuant to Judge Nusrat J. Choudhury's Chamber Rule 5.5.10. (Pl.'s Mot. for Supp. 56.1 Stmt.) There was nothing impermissible about Defendants' filing of a reply 56.1 statement, as Judge Choudhury's Chamber Rules do not require leave for Defendants to do so, and Local Civil Rule 56.1 does not prohibit Defendants from doing so. *See Sandy v. Target Corp.*, No. 22-CV-4804, 2026 WL 1453774, at *1 n.4 (E.D.N.Y. May 22, 2026) (collecting cases); *Irish v. Tropical Emerald LLC*, No. 18-CV-82, 2024 WL 1345711, at *9 (E.D.N.Y. Mar. 30, 2024) (stating that Local Civil Rule 56.1 does not prohibit a reply in further support of a Rule 56.1 statement of undisputed facts); *Adams v. Bloomberg L.P.*, No. 20-CV-7724, 2023 WL 2662607, at *2 (S.D.N.Y. Mar. 28, 2023) ("Local Civil Rule 56.1 does not provide for a reply in further support of a Rule 56.1 statement of undisputed facts, but it also does not prohibit such replies." (internal citation and quotation marks omitted) (collecting cases)). The Court therefore denies Plaintiff's request to file a supplemental Rule 56.1 statement.

dismissal of all causes of action alleged in the Complaint, which Plaintiff opposes.[3] On July 30, 2025, Defendants filed a motion to exclude Plaintiff's experts, which Plaintiff opposes.[4] On November 24, 2025, Plaintiff filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, which Defendants oppose.[5] For the reasons explained below the Court: (1) grants in part and denies in part Defendants' motion to exclude Plaintiff's experts; (2) grants in part and denies in part Defendants' motion for summary judgment; (3) denies Plaintiff's Rule 37 motion *in limine* to exclude Defendants' evidence and testimony; and (4) denies Plaintiff's Rule 11 motion for sanctions.

On April 16, 2026, the case was transferred from Judge Choudhury to the Court. (Order dated Apr. 16, 2026.)

[3] (Defs.' Not. of Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 126; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), appended to Defs.' Mot., Docket Entry No. 126-3; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), appended to Defs.' Mot., Docket Entry No. 126-5; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), appended to Defs.' Mot., Docket Entry No. 126-14; Pl.'s Not. of Updated Auth. ("Pl.'s Supp. Auth."), Docket Entry No. 135; Defs.' Supp. Submission ("Defs.' Supp. Auth."), Docket Entry No. 137; Pl.'s Sur-Reply in Opp'n to Defs.' Mot. and Suppl. Reply in Supp. of Pl.'s Not. of Mot. for Sanctions ("Pl.'s Sur-Reply"), Docket Entry No. 139; Defs.' Sur-Reply in Supp. of Defs.' Mot. ("Defs.' Sur-Reply"), Docket Entry No. 144; Pl.'s Reply to Defs.' Sur-Reply, Docket Entry No. 145.)

[4] (Defs.' Not. of Mot. to Exclude ("Defs.' Mot. to Exclude"), Docket Entry No. 127; Defs.' Mem. in Supp. of Defs.' Mot. to Exclude ("Defs.' Exclude Mem."), appended to Defs.' Mot. to Exclude, Docket Entry No. 127-1; Pl.'s Opp'n to Defs.' Mot. to Exclude ("Pl.'s Exclude Opp'n"), appended to Defs.' Mot. to Exclude, Docket Entry No. 127-4; Defs.' Reply in Supp. of Defs.' Mot. to Exclude ("Defs.' Exclude Reply"), appended to Defs.' Mot. to Exclude, Docket Entry No. 127-6.)

[5] (Pl.'s Not. of Mot. for Sanctions ("Pl.'s Sanctions Mot."), Docket Entry No. 136; Pl.'s Mem. in Supp. of Pl.'s Sanctions Mot. ("Pl.'s Sanctions Mem."), appended to Pl.'s Sanctions Mot., Docket Entry No. 136-2; Defs.' Mem. in Opp'n of Pl.'s Sanctions Mot. ("Defs.' Sanctions Opp'n"), appended to Pl.'s Sanctions Mot., Docket Entry No. 136-4; Pl.'s Reply in Supp. of Pl.'s Sanctions Mot. ("Pl.'s Sanctions Reply"), appended to Pl.'s Sanctions Mot., Docket Entry No. 136-6.)

# I. Background

## a. Factual background

The following facts are undisputed unless otherwise noted.[6]

Plaintiff is a business that supplies and sells, among other things, paper and plastic bags. (Defs.' 56.1 ¶ 3.) Plaintiff's Chief Executive Officer is Jeffrey Rabiea, (Rabiea July 16, 2025 Decl. ¶ 2), and Plaintiff's Chief Financial Officer is Michael Zapf, (Zapf Decl. ¶ 2).

Mustang is a business that "has brokered the sale of products to large scale grocers, distributors, and wholesalers" since 2008. (Defs.' 56.1 ¶ 1.) Mustang is owned and operated by Maierhoffer, and Maierhoffer is Mustang's "managing member" and "perform[s] broker-related duties in the course and scope of his manager's position." (*Id.* ¶ 2.)

From approximately 2008 to 2016,[7] Mustang brokered products for Plaintiff and other suppliers. (*Id.* ¶¶ 4, 12.) During this period, "Mustang and [Plaintiff] had no written contracts,

[6] (Defs.' Rule 56.1 Stmt. ("Defs.' 56.1"), appended to Defs.' Mot., Docket Entry No. 126-1; Pl.'s Resp. to Defs.' 56.1 ("Pl.'s 56.1 Resp."), appended to Defs.' Mot., Docket Entry No. 126-10; Pl.'s 56.1 Counter-Stmt. ("Pl.'s 56.1"), appended in Pl.'s 56.1 Resp. 39–46; Defs.' 56.1 Reply, appended to Defs.' Mot., Docket Entry No. 126-12; Decl. of René M. Fix, Esq. ("Fix Decl."), appended to Defs.' Mot., Docket Entry No. 126-2; Decl. of Stephen Weisbrod, Esq. in Supp. of Pl.'s Opp'n ("Weisbrod Opp'n Decl."), appended in Pl.'s 56.1 Resp. 47–49; Decl. of Jeffrey Rabiea dated Feb. 13, 2025 ("Rabiea Feb. 13, 2025 Decl."), appended in Pl.'s 56.1 Resp. 50–60; Decl. of Michael Zapf ("Zapf Decl."), appended in Pl.'s 56.1 Resp. 61–63; Decl. of Jeffrey Rabiea dated July 16, 2025 ("Rabiea July 16, 2025 Decl."), appended in Exs. Vol. II 93–96, Docket Entry No. 126-8.)

[7] Plaintiff argues that "Defendants began brokering products for [Plaintiff] in 2008." (Pl.'s 56.1 Resp. ¶ 4 (citing Rabiea July 16, 2025 Decl. ¶ 3 (stating that Defendants "brokered sales for [Plaintiff] between 2008 and March 2, 2021")); *see* Rabiea Feb. 13, 2025 Decl. ¶ 3 ("Defendants began brokering products for [Plaintiff] in 2008.").) Defendants' statement in ¶ 4 of their 56.1 is later contradicted in ¶ 12, as Defendants state that, in 2019, "[t]he parties discussed Mustang serving as [Plaintiff's] broker, *as it had from 2008 to 2016*." (Defs.' 56.1 ¶ 12.) Moreover, Defendants state in their briefing papers that they have sold Plaintiff's products since 2008. (*See* Defs.' Mem. 1, 16; Defs.' Reply 2, 5.) In "draw[ing] all permissible factual inferences in favor of" Plaintiff, the Court notes this discrepancy, but notes that it is not a disputed issue of fact since Defendants admit to this date. *See Koral v. Saunders*, 36 F.4th 400,

including without limitation, restrictive covenants." (*Id.*) Maierhoffer alleges that, in August of 2016, he "accepted employment as [Plaintiff]'s sales manager," for which the terms were outlined in a written document (the "Offer").[8] (*Id.* ¶¶ 5–6; Offer, annexed to Fix Decl. 15–16 as Ex. B.) In addition, in his corporate capacity as Mustang, Maierhoffer signed a non-compete and non-solicitation agreement with Plaintiff (the "Non-Compete and Non-Solicitation Agreement"). (Defs.' 56.1 ¶ 6; Non-Compete and Non-Solicitation Agreement, annexed to Fix Decl. 17–21 as Ex. C.) The Non-Compete and Non-Solicitation Agreement states, in relevant part:

> This is an Agreement between Mustang Marketing Group, LLC including all affiliates, subsidiaries and principals ("You") and New York Packaging Corporation II, LLC ("Company"). The Agreement is effective on August 23, 2016 ("Effective Date").
>
> In consideration of the independent contractor opportunity provided by New York Packaging II, LLC, You, intending to be legally bound, agree to the following:
>
> 1. Term of Agreement. This Agreement is effective on the Effective Date, and shall remain in effect throughout the term of your relationship with the Company as an independent contractor and for a period of two years thereafter.
>
> . . .
>
> 3. Covenant Not to Compete. You agree that at no time during the term of your relationship with the Company as an independent contractor will you engage in any business activity which is directly competitive with the Company nor work for any company which

408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Moreover, this discrepancy does not impact Plaintiff's claims, as they arise from Defendants' alleged conduct since approximately 2016, and whether Defendants began brokering products in 2008 or 2012 does not affect the outcome of this action. *See Chislett v. N.Y.C. Dep't of Educ.*, 157 F.4th 172, 183 (2d Cir. 2025) ("A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))).

[8] Plaintiff argues that Maierhoffer was never Plaintiff's employee, but instead, "performed the role of sales manager as an independent contractor." (Pl.'s 56.1 Resp. ¶ 5.) Defendants argue that Maierhoffer and Plaintiff had an "employment relationship" while Maierhoffer was Plaintiff's sales manager. (*See* Defs.' 56.1 ¶¶ 5, 7, 13, 15, 25, 32; Defs.' Mem. 1, 3.) The Court considers these stated facts as disputed.

directly competes with the Company. The only exceptions shall be with the companies for which You currently represent. You are permitted to market products that are not directly competitive with Company products on behalf of Barnes Paper, Omega, IBS/Trinity Plastics, Pakpro and Advance Polybag Inc..

4. Non-solicitation. During the term of your relationship with the Company as an independent contractor, and for a period of two (2) years immediately thereafter, You agree not to solicit any employee or independent contractor of the Company on behalf of any other business enterprise, nor shall you induce any employee or independent contractor associated with the Company to terminate or breach an employment, contractual or other relationship with the Company.

5. Soliciting Customers after Termination of Agreement.

. . .

B. <u>If You voluntarily terminate your relationship with the Company as an independent contractor:</u> for a period of two (2) years following the termination of your relationship with the Company as an independent contractor, You shall not, directly or indirectly, disclose to any person, firm or corporation the names or addresses of any of the customers or clients of the Company or any other information pertaining to them. Neither shall you call on, solicit, take away, or attempt to call on, solicit, or take away any customer of the Company on whom You have called or with whom You became acquainted during the term of your relationship with the company as an independent contractor, as the direct or indirect result of your relationship with the Company. There shall be one exception. You may continue to solicit Company customers with whom you personally have called on within the last twelve (12) months prior to termination, but only to sell product lines that are not competitive with the Company's existing business.

. . .

6. Injunctive Relief. You hereby acknowledge (l) that the Company will suffer irreparable harm if You breach your obligations under this Agreement; and (2) that monetary damages will be inadequate to compensate the Company for such a breach. Therefore, if You breach any of such provisions, then the Company shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provisions.

. . .

8. Modifications. This Agreement may be modified only by a writing executed by both You and the Company.

(Non-Compete and Non-Solicitation Agreement; Defs.' 56.1 ¶¶ 15, 30, 31.)

On February 8, 2019, Maierhoffer resigned from Plaintiff.[9] (Defs.' 56.1 ¶ 7; Feb. 2019 Resignation Ltr. and Response, annexed to Fix Decl. 22–24 as Ex. D.) [redacted] (Defs.' 56.1 ¶¶ 7–8; Feb. 2019 Resignation Ltr. and Response.) That same day, Plaintiff sent Maierhoffer a letter "acknowleg[ing] receipt of [his] resignation letter," (Feb. 2019 Resignation Ltr. and Response), and "br[ought] [his] attention to sections 4 and 8 of the [Non-Compete and Non-Solicitation Agreement]," (Defs.' 56.1 ¶ 9). Maierhoffer: (1) lost access to the database and email account provided by Plaintiff; (2) stopped receiving a salary and benefits; (3) "stopped managing the sales force"; and (4) discarded his business cards provided by Plaintiff.[10] (*Id.* ¶ 10.) Following his resignation from Plaintiff, Maierhoffer returned to running Mustang,[11] (*id.* ¶ 34), and the parties agree that Defendants acted as an independent broker for Plaintiff, (*id.* ¶ 12).

[9] Plaintiff disputes Defendants' characterization of Maierhoffer as having "resigned" from his position as sales manager for two reasons. Plaintiff argues that Maierhoffer did not "resign[]" from his position as sales manager because (1) Maierhoffer and Plaintiff did not have an "employment relationship," and (2) "Defendants functioned as independent contractors at all relevant times and Defendants continued to broker products for [Plaintiff] before, on, and after February 8, 2019 without interruption." (Pl.'s 56.1 Resp. ¶ 7.) As discussed *supra* footnote 8, whether Maierhoffer had an employment relationship with Plaintiff is disputed, and as discussed *infra* Section II.c.ii.3, whether Defendants terminated their relationship with Plaintiff as an independent contractor in February of 2019 is disputed.

[10] Plaintiff disputes this statement "to the extent that it suggests that Maierhoffer was an employee or that he ever stopped being an independent sales representative." (Pl.'s 56.1 Resp. ¶ 10.) *See* discussion *supra* footnote 9.

Beginning in 2020, Plaintiff and Maierhoffer began disputing the payment of Maierhoffer's commissions. (*Id.* ¶¶ 42–45.) On March 2, 2021, "Mustang terminated its vendor relationship with [Plaintiff]." (*Id.* ¶ 46; Mar. 2021 Resignation Ltr., annexed to Weisbrod Opp'n Decl. as Ex. 4 and appended in Pl.'s 56.1 Resp. 109–14.)

**b. Plaintiff's allegations**

**i. The state court actions**

Plaintiff filed several lawsuits against Defendants in New York state court.[12] (Defs.' 56.1 ¶ 73.) Plaintiff filed the first action against Defendants on February 25, 2022 alleging: (1) misappropriation of trade secrets under state law; (2) breach of the Non-Compete and Non-

[12] The Court is aware of four actions in state court filed by Plaintiff against Defendants and takes judicial notice of the documents filed in these state court actions. *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024))); *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (stating that state court decisions are appropriate for judicial notice where the decision was a public record); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice . . . ."); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) (stating that "[c]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings" (second alteration in original) (citations omitted)); *Connelly v. City of St. Albans*, No. 21-CV-291, 2024 WL 1976658, at *6 n.5 (D. Vt. May 3, 2024) (taking "conditional judicial notice" of a state court document on summary judgment); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record,' including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

Solicitation Agreement; (3) breach of contract; (4) tortious interference with prospective business relations; (5) breach of fiduciary duty; (6) negligence; (7) faithless servant; and (8) unjust enrichment (the "First State Court Action"). Compl., *N.Y. Packaging II LLC v. Mustang Mktg. Gr. LLC*, No. 602439/2022 (N.Y. Sup. Ct. filed Feb. 25, 2022), Docket Entry No. 1. On March 24, 2022, Plaintiff filed a notice of discontinuance. Not. of Discontinuance, *N.Y. Packaging II LLC*, No. 602439/2022 (filed Mar. 24, 2022), Docket Entry No. 4.

Plaintiff filed a second action against Defendants on December 30, 2022 alleging: (1) breach of contract; (2) breach of fiduciary duty; and (3) tortious interference with contract (the "Second State Court Action"). Compl., *N.Y. Packaging II, LLC v. Maierhoffer*, No. 600068/2023 (N.Y. Sup. Ct. filed Dec. 30, 2022), Docket Entry No. 1. On February 10, 2025, Plaintiff and Defendants signed a settlement agreement and release (the "Settlement Agreement and Release"). (Settlement Agreement and Release, annexed to Pl.'s Not. of Filing as Ex. A, Docket Entry No. 143-1.) The Settlement Agreement and Release states, in relevant part:

[redacted]

[redacted]

[13] The Settlement Agreement and Release defines the "EDNY Action" as this action. (Settlement Agreement and Release 1 ("[Plaintiff] filed a lawsuit in the U.S. District Court for the Eastern District of New York captioned *New York Packaging II LLC v. John Maierhoffer and Mustang Marketing Group LL[C]*, [N]o. 21-[CV]-1629 (the 'EDNY Action')").)

Case 2:21-cv-01629-MKB-ARL Document 154 Filed 10/07/25 Page 10 of 100 PageID #: 3570

[redacted]

(Settlement Agreement and Release 2 (emphasis added).) On February 13, 2025, pursuant to the Settlement Agreement and Release, Plaintiff filed a stipulation of discontinuance in the Second State Court Action with prejudice. Stip. of Discontinuance with Prejudice, *N.Y. Packaging II, LLC*, No. 600068/2023 (filed Feb. 13, 2025), Docket Entry No. 40.

Plaintiff filed a third action on March 8, 2024 against Maierhoffer and Daryl Danielowicz, a non-party to this action,[15] alleging: (1) misappropriation of trade secrets under state law against Danielowicz; (2) conspiracy to misappropriate trade secrets under state law against Maierhoffer and Danielowicz; (3) breach of the duty of loyalty against Danielowicz; and (4) aiding and abetting breach of the duty of loyalty against Maierhoffer (the "Third State Court Action"). Compl., *N.Y. Packaging II LLC v. Danielowicz*, No. 604169/2024 (N.Y. Sup. Ct. filed Mar. 8, 2024), Docket Entry No. 1. On September 30, 2024, the state court dismissed several of Plaintiff's claims. Decision and Order, *N.Y. Packaging II LLC*, No. 604169/2024 (filed Sep. 30, 2024), Docket Entry No. 68. The state court first dismissed Plaintiff's misappropriation of trade secrets claim because the employee handbook did not create a duty of confidentiality. *Id.* at 3.

Second, in addition to dismissal of the misappropriation of trade secrets claim, the state court dismissed Plaintiff's conspiracy to misappropriate trade secrets claim. *Id.* Third, the state court dismissed Plaintiff's aiding and abetting breach of the duty of loyalty claim, in part, because the claim was "too general, unspecific and speculative for the [c]ourt to find that [it] articulate[s] a cause of action against [ ] Maierhoffer." *Id.* The state court did dismiss Plaintiff's breach of the duty of loyalty claim and related permanent injunction claim, "but only to the extent of [Danielowicz's] actions prior to his leaving [Plaintiff's] employment on March 9, 2021." *Id.* On October 16, 2024, Plaintiff moved for leave to reargue, and on April 3, 2025, the state court heard oral argument where Plaintiff argued that "the [c]ourt should not have only considered [ ] [Plaintiff's] handbook . . . but that the [c]ourt should also have considered the common law aspects of the case." Decision and Order 3, *N.Y. Packaging II LLC*, No. 604169/2024 (filed June 11, 2025), Docket Entry No. 120. On June 11, 2025, the state court vacated its dismissal and reinstated the dismissed claims for misappropriation of trade secrets, conspiracy to misappropriate trade secrets, and aiding and abetting breach of the duty of loyalty (the "Third State Court Action Reinstatement"). *Id.* at 4. In reinstating the action, the state court concluded, in part, that when viewing the complaint, "at the very least from a common law perspective, [it] states causes of action that comply with common law, and where applicable, [New York Civil Practice Law and Rules] § 3016(b)." *Id.* On June 13, 2025, Maierhoffer filed a motion requesting that the court vacate the Third State Court Action Reinstatement, which the state court denied on November 25, 2025.[16] On July 3, 2025, Maierhoffer filed a notice of appeal to the Appellate Division, Second Judicial Department of the Supreme Court of the State of New York,

[16] Not. of Mot. to Vacate, *N.Y. Packaging II LLC*, No. 604169/2024 (filed June 13, 2025), Docket Entry No. 122; Decision and Order, *N.Y. Packaging II LLC*, No. 604169/2024 (filed Nov. 25, 2025), Docket Entry No. 149.

which appeal is currently pending. Not. of Appeal, *N.Y. Packaging II LLC*, No. 604169/2024 (filed July 3, 2025), Docket Entry No. 137; *see* Not. of Appeal, *N.Y. Packaging II LLC v. Danielowicz*, No. 2025-8780 (App. Div. filed July 3, 2025), Docket Entry No. 1. On January 20, 2026, Maierhoffer moved for a judgment on the pleadings in the Third State Court Action despite the pending appeal. Not. of Mot. for J. on the Pleadings, *N.Y. Packaging II LLC*, No. 604169/2024 (filed Jan. 20, 2026), Docket Entry No. 163. On February 25, 2026, Plaintiff and Danielowicz filed a joint stipulation of discontinuance with prejudice stating that "[f]or avoidance of doubt, [Plaintiff]'s claims against [ ] Maierhoffer are not dismissed pursuant to this [s]tipulation." Stip. of Discontinuance as to Danielowicz, *N.Y. Packaging II LLC*, No. 604169/2024 (filed Feb. 25, 2026), Docket Entry No. 172.

Plaintiff filed a fourth action in state court on July 16, 2025, against Defendants alleging: (1) breach of contract; (2) breach of fiduciary duty; (3) tortious interference with contract; and (4) tortious interference with business relations (the "Fourth State Court Action"). Compl., *N.Y. Packaging II, LLC v. Maierhoffer*, No. 615114/2025 (N.Y. Sup. Ct. filed Aug. 18, 2025), Docket Entry No. 5. On December 29, 2025, the state court dismissed the action because the discontinuation of the Second State Court Action precluded the complaint pursuant to the doctrine of *res judicata*. Decision and Order 6, *N.Y. Packaging II, LLC*, No. 615114/2025 (filed Dec. 29, 2025), Docket Entry No. 30. On January 13, 2026, Plaintiff filed a notice of appeal to the Appellate Division, Second Judicial Department of the Supreme Court of the State of New York, which appeal is currently pending. Not. of Appeal, *N.Y. Packaging II, LLC*, No. 615114/2025 (filed Jan. 13, 2026), Docket Entry No. 32; *see* Not. of Appeal, *N.Y. Packaging II LLC v. Maierhoffer*, No. 2026-545 (App. Div. filed Feb. 20, 2026), Docket Entry No. 1.

Case 2:21-cv-01629-JMA-ARL Document 153 Filed 10/07/25 Page 13 of 100 PageID #: 3573

#### ii. The current action

Plaintiff commenced the above-captioned action on March 26, 2021 in this Court. (*See* Compl.) First, Plaintiff alleges that Defendants misappropriated its trade secrets in violation of the DTSA and state law and breached the Non-Compete and Non-Solicitation Agreement to "broker[] sales for directly competitive products." (*Id.* ¶¶ 109, 120.) Second, Plaintiff alleges that Defendants breached the parties' oral agreement, as Defendants promised Plaintiff that they would sell any unsold inventory. (*Id.* ¶¶ 69, 143.) Third, Plaintiff alleges that Defendants were unjustly enriched because they received $30,000 in hand sanitizer commission payments that they were not entitled to receive.[17] (*Id.* ¶ 178.) Plaintiff also alleges contract violations for tortious interference with prospective business relations, breach of fiduciary duty, negligence, and faithless servant, arising from Defendants' conduct. (*See* Compl.) In support of its claims, Plaintiff offers the expert reports of (1) Christopher L. Picone, who is prepared to opine on Plaintiff's damages arising from Defendants' alleged violation of the Non-Compete and Non-Solicitation Agreement by engaging in competitive sales and (2) Glen Balzer, who is prepared to opine on the standard industry practices of the sales and distribution industry. In addition, Plaintiff argues that "Maierhoffer and Mustang are alter egos and should be treated as one." (Defs.' 56.1 ¶ 68.)

On May 19, 2021, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mot. to Dismiss 1,

[17] Plaintiff claims that Defendants "were enriched by $30,000 in commission advances related to sales of hand sanitizer," (Compl. ¶ 178), because Plaintiff "either did not receive payment for, received returns but not re-orders of, or refunded payments," (*id.* ¶ 179), for hand sanitizer sold by Defendants, as the hand sanitizer products had been recalled and Plaintiff "reasonably believed the customer payments would be refunded by [Plaintiff] to the purchasers," (Rabiea Feb. 13, 2025 Decl. ¶ 77).

Docket Entry No. 16.) On May 26, 2021, Plaintiff filed a motion for preliminary injunction to enjoin Defendants from violating the Non-Compete and Non-Solicitation Agreement and from using Plaintiff's "pricing, sales, or technical product information." (Pl.'s Not. of Mot. for Prelim. Inj. 1, Docket Entry No. 18.) On March 1, 2022, Judge Joan M. Azrack denied (1) Plaintiff's motion for a preliminary injunction and (2) Defendants' motion to dismiss for failure to state a claim and for improper venue.[18] (Order dated March 1, 2022; Mem. & Order dated March 1, 2022.)

## II. Discussion

### a. Standards of review

#### i. Rule 702 – Motion to strike expert report and preclude expert testimony

"The admission of expert testimony is governed primarily by the Federal Rules of Evidence." *Waldman v. Palestine Liberation Org.*, 171 F.4th 575, 594 (2d Cir. 2026); *United States v. Walker*, No. 18-3506, 2023 WL 3451419, at *1 (2d Cir. May 15, 2023); *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024) (explaining that "Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony," but that "a judge . . . should also be mindful of other applicable rules" (citation omitted)). Rule 702 of the Federal Rules of Evidence was amended on December 1, 2023, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical,

[18] Maierhoffer argued that the Eastern District of New York is an improper venue because he and Mustang are Florida residents and Plaintiff did not allege that "any significant events occurred in this District"; Plaintiff argued that "substantial events" occurred from in this District, including the development of and access to its trade secrets. (Mem. & Order dated March 1, 2022 6, Docket Entry No. 33.) In denying Maierhoffer's motion to dismiss for improper venue, Judge Azrack concluded that "Plaintiff's argument that its trade secrets were developed and accessed from this District, alone, is sufficient for venue." (*Id.*)

> or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Faison-Williams v. United States*, No. 24-1404, 2025 WL 974831, at *3 (2d Cir. Apr. 1, 2025) (summary order) (quoting *id.*); *Rutledge v. Walgreen Co.*, 182 F.4th 168, 183–84 (2d Cir. 2026) (quoting same). "The district court plays the role of gatekeeper, determining whether the expert's testimony is reliable and relevant." *Faison-Williams*, 2025 WL 974831, at *3 (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)); *see Waldman*, 171 F.4th at 594 ("The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702." (quoting *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011))); *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) ("While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper." (alteration in original) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007))); *see also Richardson v. Corr. Med. Care, Inc.*, No. 22-210, 2023 WL 3490904, at *2 (2d Cir. May 17, 2023) (summary order) ("The proponent of expert testimony bears the burden of establishing admissibility, with the district court serving a gatekeeping role to ensure that the 'expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (quoting *Williams*, 506 F.3d at 160)).

Prior to permitting a person to testify as an expert under Rule 702, the court must make the following findings: (1) the witness is qualified to be an expert; (2) "the opinion is based upon reliable data and methodology"; and (3) the expert's testimony on a particular issue will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (quoting Fed. R.

Evid. 702); *see also Rutledge*, 182 F.4th at 184 ("In addition to confirming that experts are qualified to offer testimony, Rule 702 charges district courts with the 'task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993))); *Bustamante*, 100 F.4th at 427 ("Under this rule, the [d]istrict [c]ourt . . . 'is charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (emphasis omitted) (quoting *Amorgianos*, 303 F.3d at 266)); *United States v. Napout*, 963 F.3d 163, 187–88 (2d Cir. 2020) (explaining that the court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" (quoting *Daubert*, 509 U.S. at 597)); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004) (quoting same). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court set forth a list of factors, in addition to the criteria set forth in Rule 702, that bear on the determination of reliability:

> (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*Williams*, 506 F.3d at 160 (quoting *Daubert*, 509 U.S. at 593–94); *see also United States v. Wilbern*, No. 20-3494, 2022 WL 10225144, at *1 (2d Cir. Oct. 18, 2022) (summary order) (quoting same); *United States v. Morgan*, 675 F. App'x 53, 55 (2d Cir. 2017) (quoting same); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999)) (similar). The *Daubert* inquiry for reliability is a "flexible one" and does not "constitute a definitive checklist or test," *Kumho Tire*, 526 U.S. at 141, 150 (citation omitted), and thus, the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case," *United States v. Green*, No. 22-3217, 2024 WL 4488577,

at *1 (2d Cir. Oct. 15, 2024) (summary order) (alteration in original) (quoting *id.* at 141), *cert. denied*, 145 S. Ct. 1216 (2025).

The "district court is afforded 'the same broad latitude when it decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination.'" *Id.* (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 142); *see also Kumho Tire*, 526 U.S. at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). Expert testimony should be excluded if it is "speculative or conjectural." *United States v. Rivera*, No. 22-2780, 2024 WL 2813548, at *3 (2d Cir. June 3, 2024) (summary order) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)), *cert. denied*, 145 S. Ct. 1099 (2025); *Jones*, 965 F.3d at 162 (quoting same); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting same). When an expert's opinion is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 113 (2d Cir. 2023) (quoting *Amorgianos*, 303 F.3d at 266); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (quoting same); *see also Nimely*, 414 F.3d at 396 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (alteration in original) (quoting *Gen. Elec.*, 522 U.S. at 146)). "Nevertheless, in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion." *U.S. Small Bus. Admin. v. Feinsod*, No. 17-CV-3586, 2025 WL 1677409, at *7 (E.D.N.Y. June 13, 2025) (internal quotation marks and citation omitted); *see Adams v. Liberty Mar. Corp.*, 407 F. Supp. 3d 196, 202 (E.D.N.Y. 2019)

(same); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos*, 303 F.3d at 267) (same).

**ii. Rule 56 – Summary Judgment**

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Colwell v. Sig Sauer, Inc.*, 177 F.4th 382, 390 (2d Cir. 2026) (quoting Fed. R. Civ. P. 56(a)); *Bellin v. McDonald*, 177 F.4th 167, 181 (2d Cir. 2026) (quoting same); *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 175 F.4th 192, 197 (2d Cir. 2026) (quoting *Galloway v. Cnty. of Nassau*, 141 F.4th 417, 422–23 (2d Cir. 2025). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). *See Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013))).

The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Suarez v. Morton*, 170 F.4th 33, 58 (2d Cir. 2026) (quoting *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 633 (2d Cir. 2025)); *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73 (2d Cir. 2025) (quoting *Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024)); *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 545 (2d Cir. 2010)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see Chislett v. N.Y.C. Dep't of Educ.*, 157 F.4th 172, 183 (2d Cir. 2025) ("A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting *id.* at 248)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Chislett*, 157 F.4th at 183 (quoting *Anderson*, 477 U.S. at 248). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252; *see Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024) ("The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant." (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996))). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000); *see Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (summary order) (stating that the court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant" (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia*, 706 F.3d at 127, 129)). "Summary judgment should be granted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Chislett*, 157 F.4th at 183 (quoting Fed. R. Civ. P. 56(a)); *see Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) ("[A] genuine dispute as to a material fact precludes summary judgment

'where the evidence is such that a reasonable jury could decide in the non-movant's favor.'" (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020))), *amended on reh'g in part*, 151 F.4th 13 (2d Cir. 2025).

**iii. Rule 11 – Sanctions**

Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see Farrington v. Poole*, 185 F.4th 334, 341 n.5 (2d Cir. 2026) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)); *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable." (alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990))); *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) ("Under Fed. R. Civ. P. 11, sanctions may be imposed on a person who signs a pleading, motion, or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or [a person who] does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law."); *Bergon v. ASCAP!*, No. 24-CV-4660, 2024 WL 4955283, at *9 (E.D.N.Y. Dec. 2, 2024) (quoting *Caisse*, 28 F.3d at 264) (same). A court may impose sanctions where "there is clear evidence that the conduct at issue is (1) entirely without

color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citation omitted); *see also United States v. Sullivan*, 118 F.4th 170, 206 (2d Cir. 2024) ("Whether '[a]n argument constitutes a frivolous legal position for purposes of Rule 11 sanctions' is determined 'under an objective standard of reasonableness.'" (alteration in original) (quoting *Caisse*, 28 F.3d at 264)); *Kim*, 91 F.4th at 614–15 ("Under Rule 11, a court may sanction an attorney for, among other things, misrepresenting facts or making frivolous legal arguments." (quoting *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam)); *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (quoting Fed. R. Civ. P. 11(b)); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)); *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018) (quoting *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114); *Orr v. McGinty*, No. 17-CV-1280, 2022 WL 2440064, at *1 (N.D.N.Y. July 5, 2022) (quoting same).

Pursuant to Rule 11 motions for sanctions must be made "separately from any other motion." Fed. R. Civ. P. 11(c)(2); *Kyros*, 78 F.4th at 543 ("A party must move for sanctions in a filing that is 'separate[ ] from any other motion' and that 'describe[s] the specific conduct that allegedly violates Rule 11(b).'" (alterations in original) (quoting Fed. R. Civ. P. 11(c)(2))); *Rafter v. Fleet Boston Fin. Corp.*, 523 F. App'x 79, 81–82 (2d Cir. 2013) ("Rule 11[] require[s] that the motion be 'made separately from any other motion.'" (quoting Fed. R. Civ. P. 11(c)(2))). "Such a motion may not be presented to the court until the expiration of a twenty-one-day 'safe harbor' period, during which the alleged violator has the chance to withdraw or correct the challenged filing." *Kyros*, 78 F.4th at 543 (quoting Fed. R. Civ. P. 11(c)(2)); *see Sheehan v. Starbucks Corp.*, No. 25-189, 2026 WL 746725, at *2 (2d Cir. Mar. 17, 2026) (summary order)

Case 2:21-cv-01629-KAM-ARL Document 153 Filed 10/01/26 Page 22 of 100 PageID #: 3582

("Rule 11 sanctions, which are subject to safe-harbor protection and require only a finding of objective unreasonableness."). "The safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citations omitted); *see Behrens v. JPMorgan Chase Bank, N.A.*, No. 16-CV-5508, 2019 WL 1437019, at *14 (S.D.N.Y. Mar. 31, 2019) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied." (citing *Fierro v. Gallucci*, 423 F. App'x 17, 18–19 (2d Cir. 2011))), *aff'd*, No. 21-2603, 2024 WL 1090856 (2d Cir. Mar. 13, 2024) (summary order).

**b. Defendants' motion to strike the report and proposed testimony of Plaintiff's experts**

Defendants move to strike the entire report and proposed testimony of Plaintiff's experts, Christopher L. Picone and Glen Balzer.

**i. The Court declines to strike Christopher L. Picone's report and preclude his testimony**

Defendants move to strike the entire report and proposed testimony of Christopher L. Picone, Plaintiff's expert who is prepared to opine on Plaintiff's damages arising from Defendants' alleged violation of the Non-Compete and Non-Solicitation Agreement. In support, Defendants argue that Picone's report should be stricken and his testimony should be precluded because: (1) he offers impermissible legal conclusions, as he "intends to testify that a long list of sales Mustang made from February [of] 2019 and March [of] 2023 were competitive," and the "question of whether certain sales are competitive is a legal conclusion," (Defs.' Exclude Mem. 12–13); (2) he is not qualified to determine which products are competitive, as he is "not an industry expert" and "has no experience as a broker or manufacturer" in Mustang's industry, (*id.* at 13–14); (3) his report and testimony are not based on sufficient facts or data, as his "proposed damage calculations are based on conjecture and speculation," as Plaintiff "collected Mustang's

sales records," "identified all products it considers competitive," and "directed Picone to assume all such sales would have gone to [Plaintiff] but for Mustang's alleged breach of [the Non-Compete and Non-Solicitation] Agreement," (*id.* at 15–16); and (4) he did not apply any principles or methods to his analysis, as he "does nothing more than add Mustang's sales data and speculate that all sales for allegedly competitive products would have gone to [Plaintiff]," (*id.* at 16–17).

Plaintiff argues that Picone: (1) does not offer impermissible legal conclusions as to whether any product was competitive, as "he was asked to quantify damages based on factual assumptions," which includes "the assumption that certain sales involved competitive products," (Pl.'s Exclude Opp'n 11); (2) is qualified to offer expert testimony because he has "nearly forty years of experience in financial consulting, litigation support, and damages analysis" and "[h]e and his firm regularly provide services in forensic accounting, business valuation, and damage modeling," (*id.* at 13–14); (3) bases his opinion on sufficient facts and data, as he relied on "extensive documentation obtained from Defendants, [Plaintiff], and [Plaintiff's] competitors," which includes "sales records, commission reports, and business correspondence," (*id.* at 15); and (4) applied a reliable methodology, which is a "straightforward, industry-accepted lost profits analysis using documentary sales data and factual assumptions provided by counsel" that "has been accepted by courts and approved by hundreds of food industry claimants in complex commercial cases," (*id.* at 16–17).

**1. Picone's background and expert opinion**

Since 2012, Picone has been the President and General Counsel of Picone Advisory Group, LLC. (Report of Christopher L. Picone ("Picone Report") 2, annexed in Decl. of Stephen Weisbrod, Esq. in Supp. of Pl.'s Exclude Opp'n ("Weisbrod Exclude Decl.") 11–20 as Ex. 2,

Docket Entry No. 127-5; CV of Christopher L. Picone ("Picone CV") 1, annexed in Weisbrod Exclude Decl. 4–10 as Ex. 1.) Picone Advisory Group, LLC is "an international financial advisory firm that specializes in providing consulting services to companies of all sizes and in all industries." (Picone CV 1.) It provides services such as "strategic planning and financial assessment of business operations," "forensic analysis," and "litigation support and expert testimony." (*Id.*) Between 2008 and 2012, Picone was the President and General Counsel of Buccino & Associates, Inc., a "strategic and financial consulting firm[] providing clients comprehensive advisory services designed to enhance cash flow and position companies for long term profitability," which offered, *inter alia*, "strategic and financial assessment of business operations," "insolvency and reorganization services," and "litigation support and expert testimony." (*Id.*) Between 2003 and 2008, Picone was the Principal of Stage Development Company, LLC, a "full service real estate firm specializing in the development of . . . properties primarily in the Midwest region." (*Id.* at 2.) Prior to 2003, Picone served in various executive roles in general contracting and real estate firms. (*See id.* at 2–3.)

Picone has experience as a neutral claims administrator, "[s]ettled [c]laims [t]rustee," consultant, and expert witness. (Picone Report 2.) In addition, Picone has experience in employment agreement, trade secret, non-compete, and non-solicitation matters as a licensed attorney and corporate consultant. (*Id.*) Picone states that he has been retained (1) "in product recall and similar cases to evaluate claims as a result of damages incurred" resulting from product recalls and (2) "to evaluate claims as a result of breach of obligations pursuant to, among other things, non-compete and non-solicitation agreements, employment agreements, and other business arrangements." (*Id.*) He earned his Master of Law degree from DePaul University,

Juris Doctor from the John Marshall Law School, and Bachelor of Business Administration from Loyola University. (Picone CV 5.)

Plaintiff's counsel retained Picone as an expert to assist in the litigation against Defendants. (Picone Report 1.) Picone prepared a damages assessment based on Defendants' "sales for its benefit on behalf of other companies that were competitors of [Plaintiff]" and "estimated the lost sales and ultimately the lost gross profit damages incurred by [Plaintiff] as a result of [Defendants'] sales of competing products for other companies" between February of 2019 and March 2, 2023 (the "Evaluation Period"). (*Id.* at 6.) On January 6, 2025, Picone provided his report to Plaintiff and subsequently updated his report and damages calculation on February 10, 2025, following "the discovery of additional relevant information" from Maierhoffer's January 16, 2025 deposition regarding "certain items he brokered on behalf of Barnes Paper that he did not previously provide." (*Id.* at 1.)

Regarding methodology, Picone and his team considered, *inter alia*: (1) sales information obtained from Defendants detailing sales they brokered for and received commissions from other companies; (2) sales information obtained from other companies detailing sales for which Defendants received commissions; (3) Mustang's monthly and annual income statements obtained from Defendants; (4) the classification of products sold that either compete, may not compete, or do not compete with Plaintiff's products; and (5) a comparison of commission pursuant to sales information to revenues recognized by Defendants. (*Id.* at 6–7.) Picone and his team also "reviewed hundreds of files provided by [Plaintiff]'s counsel that were produced by [Defendants] and companies that [Defendants] brokered products for in connection with discovery requests in this litigation." (*Id.* at 7.)

Picone states that "it is industry practice, and my team's practice, to include only verified amounts for sales and other claims related information." (*Id.*) However, "[d]espite numerous requests by [Plaintiff]'s counsel," Defendants failed to "produce, among other things, detailed sales information describing sales to other companies during the Evaluation Period for which [Defendants] received commissions." (*Id.*) Picone states that "in [his] experience, parties in the position of [Defendants] ordinarily would have [produced] such information." (*Id.*) "As a result, [Plaintiff]'s counsel requested this information from the competitive companies," and Picone and his team "extrapolate[d] competitive sales from information deemed reasonably complete and accurate using reasonable and conservative assumptions." (*Id.*) Picone states that "this approach results in a conservative estimate" of "competitive sales of at least $42 million during the Evaluation Period," resulting in between $9,300,000 and $11,400,000 in damages to Plaintiff. (*Id.* at 8.)

**2. Impermissible legal conclusions**

"As a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (citation omitted); *Noriega v. Abbott Lab'ys*, --- F. Supp. 3d ----, ---, 2026 WL 1601501, at *23 (S.D.N.Y. June 4, 2026) (quoting *id.* at 1294); *In re ACTOS Antitrust Litig.*, 783 F. Supp. 3d 749, 796 (S.D.N.Y. 2025) (quoting same); *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 699 (S.D.N.Y. 2017) (quoting same); *see also United States v. Scop*, 846 F.2d 135, 139 (2d. Cir. 1988) (stating that Federal Rule of Evidence 704 "was not intended to allow experts to offer opinions embodying legal conclusions"). "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *Bilzerian*, 926 F.2d at 1294; *see also Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993) (stating

that testimony "is not objectionable merely 'because it embraces an ultimate issue to be decided by the trier of fact,'" but that courts should guard against "the admission of opinions which would merely tell the jury what result to reach" (first quoting Fed. R. Evid. 704; and then quoting Fed. R. Evid. 704 advisory committee's note to 1972 Proposed Rules)). In addition, the Second Circuit has "consistently held . . . that expert testimony that 'usurp[s] the role of the trial judge in instructing the jury as to the applicable law . . .' by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach.'" *Nimely*, 414 F.3d at 397 (first quoting *Bilzerian*, 926 F.2d at 1294; and then quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 801 F. Supp. 3d 330, 380 (S.D.N.Y. 2025) ("Expert testimony must not 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" (quoting *Bilzerian*, 926 F.2d at 1294)), *appeal dismissed*, No. 25-2756, 2025 WL 4092207 (2d Cir. Dec. 10, 2025); *SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("Expert testimony may not usurp the province of the judge to instruct on the law . . . ." (first citing *Bilzerian*, 926 F.2d at 1294; and then citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510–11 (2d Cir. 1977))); *see also A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016) (stating that "instructing the jury as to the applicable law is the distinct and exclusive province of the court" (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004))).

Defendants' argument that Picone offers impermissible legal conclusions is not supported by the evidence. First, Defendants do not provide any caselaw supporting their argument that a damages calculation assuming competitive sales is an impermissible legal conclusion, and Plaintiff persuasively argues that Picone does not offer impermissible legal conclusions because

Case 2:21-cv-01629-KM-ARL Document 153 Filed 10/07/26 Page 28 of 100 PageID #: 3588

he was "not asked to determine whether any product was competitive." (Pl.'s Exclude Opp'n 11.) Plaintiff, instead, "asked [Picone] to quantify damages based on factual assumptions," which includes "the assumption that certain sales involved competitive products." (*Id.*) Picone testified at his deposition that he and his team "did[] [not] and [ ] would not give an opinion on whether an agreement was breached or not breached because that's a legal opinion and we're not here to give either legal advice or express legal opinions" and affirmed that any particular transaction identified as part of the damages calculation does not constitute a conclusion that Mustang breached any agreement. (Picone Dep. 71:9–19, 1/8/25, annexed in Weisbrod Exclude Decl. 21–65 as Ex. 3.) Because an expert may present a damages calculation on the basis of assumed facts, the Court finds that Picone's opinions do not constitute impermissible legal conclusions. *See Brun v. PeakCM Lake St. Hotel, LLP*, No. 24-CV-846, 2026 WL 1724560, at *3 (D. Vt. June 15, 2026) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." (quoting *Williams v. Illinois*, 567 U.S. 50, 57 (2012))); *Bigglestone v. Crowe LLP*, No. 21-CV-273, 2026 WL 1245998, at *9 (D. Vt. Mar. 31, 2026) ("An expert may testify on the basis of assumed facts or in response to hypothetical questions as long as there is or will be some basis in the record to permit the trier of fact to find that the assumptions or hypothe[ses] are correct." (alteration in original) (quoting *SEC v. Biovail Corp.*, No. 08-CV-2979, 2009 WL 10872976, at *1 (S.D.N.Y. Dec. 22, 2009))); *Harrington Glob. Opportunity Fund, Ltd. v. BofA Sec., Inc.*, No. 21-CV-761, 2026 WL 836248, at *11 (S.D.N.Y. Mar. 26, 2026) ("[A]n expert may ground his opinion on 'hypotheticals based on assumptions about testimony,' allowing the expert to give his opinion 'but leaves the credibility issues to the jury.'" (quoting *Scop*, 846 F.2d at 143)).

In addition, Picone's assumption of competitive sales for the purposes of calculating

damages is not an impermissible legal conclusion because an expert may presume causation when presenting damage calculation methods. *See Avery Dennison Corp. v. Four Pillars Ent. Co.*, 45 F. App'x 479, 486–87 (6th Cir. 2002) (holding that the district court did not abuse its discretion in admitting the testimony of plaintiff's damages expert witness where the expert witness assumed "central questions of liability in the case"); *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988) ("[The expert's] testimony did not have to establish the validity of the central, disputed factual claims in this case in order to have a factual basis and be admissible."); *TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 731 (10th Cir. 1993) ("The fact that [the expert] assumed certain sales figures does not necessarily make his testimony inadmissible. Indeed, this is the classic form of the 'hypothetical question,' which has long been recognized as a proper method of bringing out expert testimony."); *Harrington Glob. Opportunity Fund, Ltd.*, 2026 WL 836248, at *11 ("[A]n expert may ground his opinion on 'hypotheticals based on assumptions about testimony,' allowing the expert to give his opinion 'but leaves the credibility issues to the jury.'" (quoting *Scop*, 846 F.2d at 143)); *Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, No. 18-CV-6626, 2023 WL 2529115, at *5 (S.D.N.Y. Mar. 15, 2023) (concluding that a damages expert is sufficiently qualified and can assume a finding of liability where he "holds a Ph.D. in Economics and is an economic consultant and author, with more than 40 years of experience"); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 333 (N.D.N.Y. 2021) (concluding that it is appropriate for an expert on causation and damages to assume a finding of liability); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 412 F. Supp. 3d 392, 406 (S.D.N.Y. 2019) ("[The d]efendants are free to challenge the accuracy of [the expert's] assumptions underlying his opinion on loss causation, but his testimony does not contain bare conclusions, relies on legitimate sources, and

is admissible."), *aff'd*, 13 F.4th 247 (2d Cir. 2021).

The Court therefore finds that Picone's report and intended testimony regarding his damages calculation is not an impermissible legal conclusion.[19]

### 3. Qualifications

In some cases, "a district court may properly conclude that witnesses are insufficiently qualified despite the relevance of their testimony because their expertise is too general or too deficient." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997); *see Williams v. E. Meadow Union Free Sch. Dist.*, No. 21-CV-3310, 2026 WL 790580, at *7 (E.D.N.Y. Mar. 20, 2026) (quoting *Stagl*, 117 F.3d at 81); *Mobius v. Quest Diagnostics Clinical Lab'ys, Inc.*, 687 F. Supp. 3d 357, 372 (W.D.N.Y. 2023) (quoting same); *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (quoting same). However, even if a proposed expert lacks such specific training or experience, "he may still have 'practical experience' or 'specialized knowledge' qualifying him to give opinion testimony under Rule 702." *Guerrero v. Loiacono*, 769 F. Supp. 3d 158, 166 (E.D.N.Y. 2024) (quoting *Lickteig*, 589 F. Supp. 3d at 328); *Lickteig*, 589 F. Supp. 3d at 328 (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)); *see United States v. Leech*, No. 24-CR-658, 2026 WL 1113346, at *16 (S.D.N.Y. Apr. 24, 2026) (citing *McCullock*, 61 F.3d at 1043); *see also United States v. Simmons*, No. 23-6771, 2025 WL

[19] Defendants also rely on Picone's assumption of causation to argue that Picone's opinions are prejudicial. (Defs.' Exclude Mem. 23.) However, for the same reasons as discussed above, Picone's report and proposed testimony are not prejudicial because Picone may presume causation to present his damage calculation methods. *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 333 (N.D.N.Y. 2021) (concluding that it is appropriate for an expert on causation and damages to assume a finding of liability); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-CV-681, 2015 WL 5459662, at *10 (S.D.N.Y. Sep. 16, 2015) ("For the purpose of presenting his damage calculation methods, [a damages expert] is entitled to presume causation (a prerequisite to recovery which will have to be established by evidence other than [his] testimony)." (alterations in original) (citation omitted)).

615459, at *3 (2d Cir. Feb. 26, 2025) (summary order) ("Rule 702 allows an expert witness to give an opinion based on her . . . 'specialized knowledge . . . .'" (quoting Fed. R. Evid. 702)). In such cases, the court must "'compar[e] the area in which the witness has superior knowledge, skill, experience, or education' with the actual 'subject matter of the witness's testimony.'" *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018) (quoting *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994)); *see United States v. Chin*, 371 F.3d 31, 40 (2d Cir. 2004) ("To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."); *Spectrum Dynamics Med. Ltd. v. GE Healthcare Techs., Inc.*, No. 18-CV-11386, 2026 WL 926689, at *5 (S.D.N.Y. Apr. 6, 2026) (quoting *Chin*, 371 F.3d at 40)); *see also Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, No. 17-CV-6980, 2025 WL 1907206, at *2 (E.D.N.Y. July 10, 2025) (explaining that in order to determine whether the witness is an expert, the court must compare "'the area in which the witness has superior knowledge, skill, experience, or education' and 'the actual subject matter of the witness's testimony'" (citation omitted)).

"If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Guerrero*, 769 F. Supp. 3d at 166 (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007)); *Hamraz v. Diversified Maint. Sys., LLC*, No. 18-CV-1864, 2023 WL 5200282, at *3 (E.D.N.Y. Aug. 14, 2023) (quoting same); *Zyprexa Prods.*, 489 F. Supp. 2d at 282 (citing *Stagl*, 117 F.3d at 80). "Assertions that the witness lacks particular educational or other experiential background, 'go to the weight, not the admissibility, of [the] testimony.'"

Case 2:21-cv-01629-MKB-ARL Document 153 Filed 10/07/26 Page 32 of 100 PageID #: 3592

*Zyprexa Prods.*, 489 F. Supp. 2d at 282 (alteration in original) (quoting *McCullock*, 61 F.3d at 1044); *see also 136 Field Point Circle Holding Co. v. Razinski*, No. 21-CV-11076, 2025 WL 757558, at *14 (S.D.N.Y. Mar. 4, 2025) (quoting *Zyprexa Prods.*, 489 F. Supp. 2d at 282).

Defendants' argument that Picone is not qualified to opine about Plaintiff's damages is not supported by the record. First, it is more appropriate for Defendants to challenge Picone's qualifications on cross-examination because his qualifications impact the credibility and weight of his testimony, not its admissibility. *See McCullock*, 61 F.3d at 1043 (stating that challenges to an expert's qualifications were "properly explored on cross-examination and went to his testimony's weight and credibility — not its admissibility"); *Evers v. Hoffman*, 822 F. Supp. 3d 295, 303 (E.D.N.Y. 2026) ("[O]bjections to an expert's qualifications generally go to the credibility and weight of the expert's testimony, not its admissibility." (quoting *Thomas v. YRC Inc.*, No. 16-CV-6105, 2018 WL 919998, at *5–6 (S.D.N.Y. Feb. 14, 2018))); *Sabby Volatility Warrant Master Fund Ltd. v. Kennedy*, No. 23-CV-601, 2025 WL 3640229, at *5 (S.D.N.Y. Dec. 16, 2025) ("Arguments that a proffered expert lacks particular education or other experiential background, go to the weight, not the admissibility, of the testimony." (quoting *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, No. 12-CV-5803, 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013))); *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 539 (S.D.N.Y. 2024) ("Assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of [the] testimony." (alteration in original) (quoting *Zyprexa Prods.*, 489 F. Supp. 2d at 282)).

Picone is also qualified to opine on damages because "an expert may be qualified based on 'knowledge, skill, experience, training, or education,'" *SR Int'l Bus. Ins. Co. v. World Trade

*Ctr. Props., LLC*, 467 F.3d 107, 132 (2d Cir. 2006) (quoting Fed. R. Evid. 702), and courts in the Second Circuit liberally construe expert-qualification requirements. *See CCM Touring LLC v. Moonbug Ent. Ltd.*, No. 23-CV-7116, 2026 WL 848392, at *19 (S.D.N.Y. Mar. 27, 2026) ("In this Circuit, '[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.'" (quoting *Ultra Recs., LLC v. Ultra Int'l Music Publ'g, LLC*, No. 22-CV-9667, 2024 WL 4663011, at *2 (S.D.N.Y. Nov. 4, 2024))); *Wells Fargo Bank, N.A. v. U.S. Life Ins. Co. in N.Y.*, No. 22-CV-8606, 2025 WL 2220948, at *29 (S.D.N.Y. Aug. 4, 2025) ("An expert witness may be qualified where he has 'experience, knowledge, or training related to [a] general area,' even if he lacks experience as to the 'specific question before [the] trier of fact.'" (alterations in original) (quoting *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04-CV-7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006))); *Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 389 (S.D.N.Y. 2024) ("Courts in the Second Circuit liberally construe expert-qualification requirements.").

Liberally construing the expert-qualification requirements, the Court finds that Picone is sufficiently qualified to opine on Plaintiff's alleged damages. First, Picone is qualified as a damages expert because he has "nearly forty years of experience in financial consulting, litigation support, and damages analysis" and has served "as a consultant and expert in matters involving business losses, product recalls, non-compete disputes, and contract claims." (Pl.'s Exclude Opp'n 2, 13.) *See Liberty Mut. Ins. Co. v. Day to Day Imps. Inc.*, No. 22-CV-2181, 2025 WL 2117897, at *12 (S.D.N.Y. July 29, 2025) ("[The expert's forty] years of experience in the marine insurance industry are sufficient to qualify him as an expert on industry practice."),

*on reconsideration in part*, 2025 WL 2531478 (S.D.N.Y. Sep. 3, 2025); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 380–81 (S.D.N.Y. 2023) ("[The expert] — a [certified public accountant] with decades of accounting experience — is qualified to testify as to damages.").

Picone testified at his deposition that he has conducted commissions calculations for manufacturers "numerous times . . . in the course of [his and his team's] consulting and . . . [his] legal practice" and has served as an expert in at least three cases involving, for example, food recalls and bankruptcy. (Picone Dep. 14:1–21, 56:10–22, 1/8/25, annexed in Decl. of René M. Fix, Esq. ("Fix Exclude Decl."), 5–25 as Ex. B, Docket Entry No. 127-2.) Moreover, Picone has experience as a manufacturer of grocery products (1) as a co-owner of Chicago Electric, which "manufactured control systems of assembly line processes primarily in the cardboard box converting industry" and (2) through his involvement at Infinitybox, which "manufactures power systems in the automotive industry." (*Id.* at 24:13–25.) In these roles, he sold products both directly and through brokers. (*Id.* at 25:10–11.) In addition, while Picone is not an accountant, he "engaged and supervised other professional to assist [him]," including certified public accountants. (Picone Report 2.) Picone testified at his deposition that a certified public account, Paul Nockles, an individual who was previously a partner at a "big national public accounting firm," was involved in "a lot of the number crunching . . . [and] putting together the schedules." (Picone Dep. 9:19–25, 10:23–11:1, 1/8/25, annexed in Weisbrod Exclude Decl.) Therefore, Picone's lack of industry-specific experience does not disqualify his proffered testimony because (1) he has sufficient business-related experience to opine on damages related to contract violations and (2) he engaged with accountants to produce the report. *See Leech*, 2026 WL 1113346, at *28 (concluding that an expert was qualified to testify on issues related to portfolio

Case 2:21-cv-01626-MKB-ARL Document 153 Filed 10/07/26 Page 35 of 100 PageID
#: 3595

management where the expert has "research experience in evaluating the performance of asset managers and in portfolio management"); *CCM Touring*, 2026 WL 848392, at *19 (finding that "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent" (alteration in original) (quoting *Ultra Recs.*, 2024 WL 4663011, at *2)); *In re Corp. Res. Servs., Inc.*, 603 B.R. 888, 896 (Bankr. S.D.N.Y. 2019) (finding that the expert's "lack of experience in litigation is not disqualifying" because "work experience can and often does provide a proper basis for required expertise" and the expert "testified about his many years of experience in financial analysis and valuation services").

The Court finds that Picone's extensive experience in "financial consulting, litigation support, and damages analysis" is sufficient to qualify him as an expert for the purposes of Plaintiff's damages calculations.

**4. Sufficient facts or data and reasonable methodology**

Defendants' arguments that Picone's report and testimony (1) are not based on sufficient facts or data and (2) lacks reasonable methodology to his analysis, are not supported by the record or the relevant law.

**A. Sufficient facts or data**

Defendants fail to show that Picone's report and testimony are inadmissible on the grounds that "it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 254 (2d Cir. 2021) (quoting *Boucher*, 73 F.3d at 21); *see Glenn v. UPMC Chautauqua*, No. 21-CV-839, 2025 WL 1118624, at *8 (W.D.N.Y. Mar. 27, 2025) ("Provided the basis for the expert testimony at issue is

'supported by good grounds,' 'shaky but admissible evidence' should be subject to attack by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" (alteration in original) (quoting *Amorgianos*, 303 F.3d at 267); *Ctr. for Indep. of Disabled, N.Y. v. Metro. Transp. Auth.*, No. 17-CV-2990, 2023 WL 7403642, at *3 (S.D.N.Y. Nov. 9, 2023) (rejecting the plaintiff's argument that the expert's "methodologies are unreliable because they are founded on flawed assumptions" where the plaintiffs did not show that the expert's "assumptions underlying his analysis are so unfounded as to suggest bad faith").

Defendants argue that Picone's report and testimony is "unreliable and/or speculative" because he did not consider alternative factual scenarios. However, this argument fails because the consideration of alternative factual scenarios impacts the weight and credibility of his report and testimony, not their admissibility. *See CCM Touring*, 2026 WL 848392, at *13 ("[T]he existence of alternative factual scenarios that an expert has not considered in rendering an opinion goes only to the weight and credibility of the expert's testimony, not its admissibility." (quoting *Media Glow Digit., LLC v. Panasonic Corp. of N. Am.*, No. 16-CV-7907, 2019 WL 1055527, at *5 (S.D.N.Y. Mar. 6, 2019))); *Glenn*, 2025 WL 1118624, at *9 ("[A]lthough expert testimony 'should be excluded where it is speculative or conjectural, . . . arguments that the expert's assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" (second alteration in original) (quoting *Robinson v. Suffolk Cnty. Police Dep't*, 544 F. App'x 29, 32 (2d Cir. 2013))), *report and recommendation adopted*, 2025 WL 1114389 (W.D.N.Y. Apr. 15, 2025); *Pike Co. v. Universal Concrete Prods., Inc.*, 524 F. Supp. 3d 164, 176 (W.D.N.Y. 2021) ("[A]rguments about the assumptions and data underlying an expert's testimony go to the weight, rather than the admissibility, of that testimony." (quoting *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1674796, at *7 (S.D.N.Y. May 2, 2011))); *Guardino v. Alutiiq*

*Diversified Servs., LLC*, 457 F. Supp. 3d 158, 162 (N.D.N.Y. 2020) ("Disputes regarding . . . an expert's use or application of her methodology, or the existence or number of supporting authorities for an expert's opinion, go to the weight, not the admissibility of her testimony." (citing *McCullock*, 61 F.3d at 1044)); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013) ("An expert opinion is not *per se* unreliable because it relies upon some unverified or inaccurate information provided by the expert's client.").

**B. Reasonable methodology**

Picone sufficiently demonstrates his methodology for obtaining and analyzing data. Picone concedes that he did not employ the "industry practice . . . to include only verified amounts for sales and other claims[-]related information" because Defendants failed to "produce[] most of the requested information." (Picone Report 7.) To overcome this, Picone "elected to extrapolate competitive sales from information deemed reasonably complete and accurate using reasonable and conservative assumptions." (*Id.*) Picone testified at his deposition that his methodologies are "simple math" involving "detailed investigation and tracking down pieces of evidence from start to finish." (Picone Dep. 57:2–7, 1/8/25, annexed in Fix Exclude Decl.) Moreover, Picone also testified that he has previously used this methodology when "doing M&A activity for companies that . . . may have sustained some kind of loss." (*Id.* at 130:10–23.) Picone states that this methodology for obtaining and analyzing data is "the most reasonable approach to quantify the damages sustained by [Plaintiff], even if not perfectly accurate." (Picone Report 7; *see* Picone Dep. 112:11–15, 1/8/25, annexed to Weisbrod Exclude Decl.)

Defendants argue that Picone's methodology is based in bad faith because he "does nothing more than add Mustang's sales data and speculate that all sales for allegedly competitive

products would have gone to [Plaintiff].” (Defs.’ Exclude Mem. 17.) The Court finds that Picone’s methodology is not based on bad faith because experts can rely on a range of data to opine on damages. *See Angiodynamics*, 537 F. Supp. 3d at 337 (stating that “experts have wide latitude with respect to the data on which they rely, and challenges concerning the reliability of an expert’s data often present questions of weight, rather than admissibility” (collecting cases)); *Gaudette v. Saint-Gobain Performance Plastics Corp.*, No. 11-CV-932, 2014 WL 1311530, at *8 (N.D.N.Y. Mar. 28, 2014) (finding an expert’s opinions “sufficiently reliable and based on sufficient facts” when the expert “physically inspected the [product] at issue, reviewed deposition transcripts and other case materials, and researched applicable industry standards and practices”).

The Court finds that Picone’s methodology for obtaining and analyzing data is sufficient for the purpose of calculating damages. Moreover, Defendants can cross-examine Picone regarding whether he ignored relevant evidence and that Picone incorrectly identified competitive products. *See Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 18-CV-1657, 2024 WL 3520168, at *14 (D. Conn. May 30, 2024) (stating that any “infirmities” as to the expert’s remediation estimates are “properly addressed through cross examination”); *Abbott Lab’ys v. Adelphia Supply USA*, No. 15-CV-5826, 2019 WL 5696148, at *47 (E.D.N.Y. Sep. 30, 2019) (“Absent a showing that [the expert’s] opinion is speculative or otherwise inherently unreliable, [the d]efendants’ criticisms of [the expert’s] methodology and assumptions go the weight of his testimony — not to its admissibility.”); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010) (“To the extent that a party questions the weight of the evidence upon which the other party’s expert relied or the conclusions generated from the expert’s assessment of that evidence, it may present those challenges through cross-examination of the expert.”).

### ii. The Court strikes Glen Balzer's report and precludes him from testifying as an expert

Defendants move to strike the entire report and proposed testimony of Glen Balzer, Plaintiff's expert who is prepared to opine on "standard industry practices and common understandings within the sales and distribution industry regarding the expectations of sales representatives and brokers who work on behalf of sellers and distributors of products." (Pl.'s Exclude Opp'n 6.) In support, Defendants argue that Balzer's report should be stricken and his testimony should be precluded because: (1) he offers "impermissible legal conclusions," as "[Plaintiff] seeks to admit Balzer's proposed testimony that brokers owe a duty of loyalty to the seller" and that "the duty of loyalty prohibits disclosure of confidential information," (Defs.' Exclude Mem. 18–19); (2) he is not qualified to opine on standard industry practices, as his experience "as a legal expert who drafts and negotiates contracts" "arise[s] from the unauthorized practice of law" because "he is not an attorney and has no legal training," (*id.* at 19); (3) his report and testimony are not based on sufficient facts or data, as "only a court or fact finder can decide whether a duty of loyalty exists and/or the circumstances under which the duty is breached," (*id.* at 20–21); and (4) he did not apply any principles or methods to his analysis, as he "failed to apply any methodology" or "cite any authoritative sources, industry publications, or peer-reviewed materials to support his claims about 'industry standards,'" (*id.* at 21–22).

Plaintiff argues that Balzer: (1) does not offer impermissible legal conclusions, as he "opines on the standard practices and expectations within the sales representative [ ] industry regarding the loyalty expected of sales representatives," (Pl.'s Exclude Opp'n 18); (2) is qualified to offer expert testimony because he has "over [forty] years of relevant experience in the consumer good and brokerage industries," including "negotiating and reviewing hundreds of contracts between brokers and suppliers across a wide range of industries," (*id.* at 19); (3) bases

his opinion on sufficient facts and data, as his "opinions are based on his decades of personal experience working with brokers and suppliers," (*id.* at 20); and (4) applied appropriate principles and methods to his analysis, as "he reached his conclusions by identifying consistent patterns across hundreds of broker agreements and drawing from his years of participation in the industry," (*id.* at 21).

For the reasons explained below, the Court grants Defendants' motion to strike Balzer's report and preclude him from testifying.

**1. Balzer's background and expert opinion**

Balzer is a forensic and management consultant focused on marketing and sales. (Expert Report of Glen Balzer ("Balzer Report") 4, annexed in Weisbrod Exclude Decl. 75–102 as Ex. 5.) Since 1973, Balzer has "created, upgraded, managed, and merged sales and marketing organizations throughout North America and Asia" and has "advise[d] parties involved in relationships and contracts between suppliers, manufacturers' representatives, customers, and distributors." (*Id.*) Since 2000, Balzer has "operated as a management and forensic consultant to manufacturers, distributors, and manufacturers' representatives." (*Id.*) He has been the President of New Era Consulting since 1998, where he "[c]reate[s] and upgrade[s] distribution and representative agreements" and "[t]estif[ies] at trial, arbitration, and deposition as an expert witness in cases between global suppliers, manufacturers' representatives, and industrial distributors." (*Id.* at 20.) Plaintiff's counsel retained Balzer as an expert to assist in the litigation against Defendants. Balzer prepared a report determining that "Maierhoffer has real and continuing obligations to [Plaintiff]." (*Id.* at 16.) First, based on "industry custom and practice observed over [his] decades of work in many industries," Balzer states that "Maierhoffer took on obligations to [Plaintiff], including obligations to remain loyal and, relatedly, to maintain the

confidentiality of confidential information." (*Id.* at 16–17.) In addition, Balzer states that while he has "not been asked to interpret the [Non-Compete and Non-Solicitation] Agreement," it "appears consistent" with this understanding. (*Id.*) Second, "based on general industry custom and practice," Balzer states that Maierhoffer "had a duty to keep confidential information confidential even after the relationship ended," which "appears to be consistent with the [Non-Compete and Non-Solicitation] Agreement." (*Id.* at 17.)

**2. Impermissible legal conclusions**

Defendants persuasively argue that Balzer offers impermissible legal conclusions. The Court is not convinced by Balzer's argument that his conclusion regarding Maierhoffer's owed duties of loyalty and confidentiality does not constitute an interpretation of the Non-Compete and Non-Solicitation Agreement because his conclusion is based on "industry custom and practice." First, Balzer does not detail the industry customs or practices on which he relies; instead, he merely states that his conclusion is based on "industry custom and practice observed over [his] decades of work in many industries." (*Id.* at 16–17.) Second, Balzer's conclusion is a recitation of the central issue in this action — whether Defendants owed Plaintiff a duty of loyalty and confidentiality — and Balzer's report opining on the existence of a contractual duty is a legal question to be decided by the Court. *See In re Thilman*, 557 B.R. 294, 302 (Bankr. E.D.N.Y. 2016) ("[D]espite [the] plaintiff's argument to the contrary, the [r]eport lacks any reference to industry customs and practices. It simply recites [the expert's] own subjective legal view of one of the central issues before the [c]ourt — whether [the defendants] had a duty to inquire."); *SEC v. Rorech*, 673 F. Supp. 2d 217, 227 (S.D.N.Y. 2009) ("The issue of the existence of a duty of confidentiality is one that can be decided by a court as a matter of law."). Because the central issue in this action is whether Defendants owed Plaintiff duties of loyalty

and confidentiality, Balzer's report and intended testimony opining on whether Maierhoffer owed Plaintiff these duties constitute an impermissible legal conclusion. *See United States v. Chastain*, 145 F.4th 282, 299 (2d Cir. 2025) ("The meaning of [the employer's] confidentiality agreement is a legal question to which a witness cannot provide an answer."); *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-1781, 2026 WL 2075999, at *10 (S.D.N.Y. July 17, 2026) ("[A]n expert may not . . . testify about the meaning of legal terms." (alteration in original) (quoting *Levinson v. Westport Nat'l Bank*, Nos. 09-CV-269, 09-CV-1955, 10-CV-261, 2013 WL 3280013, at *4 (D. Conn. June 27, 2013))); *Day to Day Imps.*, 2025 WL 2117897, at *7 ("[A]n expert should not be permitted to opine on the proper construction of contract, which is a question of law to be 'interpreted according to general rules of contract interpretation.'" (quoting *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 48 (S.D.N.Y. 2022))); *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649, 2025 WL 1276513, at *7 (S.D.N.Y. May 2, 2025) ("It is not the province of an expert witness to interpret the [m]anagement [a]greement, nor to apply the legal standard set out in that contract to the facts."); *Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949, 2025 WL 16333, at *2 (E.D.N.Y. Jan. 2, 2025) ("[A]n expert may not 'provide legal opinions, legal inclusions, or interpret legal terms.'" (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005))); *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 634 (S.D.N.Y. 2012) ("Whether there was a duty and what that duty consisted of is a matter of law. Therefore, no expert . . . can testify as to the existence of a duty.").[20]

[20] Given that Balzer's report and intended testimony constitute an impermissible legal conclusion, the Court declines to discuss Defendants' remaining challenges to Balzer's report and intended testimony, which are: (1) Balzer's qualifications; (2) the sufficiency of facts or data; (3) the sufficiency of principles or methods; and (4) prejudice. (*See generally* Defs.' Exclude Mem.)

The Court therefore grants Defendants' motion to strike Balzer's report and preclude him from testifying.

**c. The Court grants in part and denies in part Defendants' motion for summary judgment**

Defendants argue that they are entitled to summary judgment and that the Court should dismiss the Complaint because: (1) *res judicata* bars this action; (2) there are additional reasons why Plaintiff's claims for misappropriation of trade secrets, breach of contract, tortious interference with prospective business relations, breach of fiduciary duty, negligence, faithless servant, and unjust enrichment fail; and (3) Mustang and Maierhoffer are not alter egos.

**i. *Res judicata***

Defendants argue that Plaintiff's claims are barred by *res judicata*. First, Defendants contend that the Third State Court Action bars this action because both actions "arise from the parties' broker relationship." (Defs.' Mem. 11.) Second, Defendants argue that the Fourth State Court Action bars this action because the action was dismissed, and Plaintiff's claims for breach of contract, breach of fiduciary duty, and tortious interference with contracts and business relationships (1) are alleged in this action, (2) arise from the same broker relationship as in this action, and (3) arise from the same Non-Compete and Non-Solicitation Agreement as in this action.[21] (Defs.' Supp. Submission 2.)

Plaintiff argues that its claims are not barred by *res judicata*. First, Plaintiff contends that the Third State Court Action does not preclude this action because it was vacated, and *res*

[21] In addition, Defendants argue that Plaintiff's discontinuance as to Danielowicz in the Third State Court Action precludes this action pursuant to *res judicata*. (*See* Defs.' Sur-Reply.) However, Defendants' claim as to the Third State Court Action fails because the stipulation of discontinuance explicitly states that the discontinuance does not apply to Maierhoffer. Stip. of Discontinuance as to Danielowicz, *N.Y. Packaging II LLC*, No. 604169/2024 (filed Feb. 25, 2026), Docket Entry No. 172.

*judicata* does not apply to vacated orders. (Pl.'s Opp'n 11.) Second, Plaintiff argues that the Fourth State Court Action does not preclude this action because the Settlement Agreement and Release preserved Plaintiff's claims in this action, as the parties agreed that the discontinuance of the Second State Court Action would not have preclusive effect in this action. (Pl.'s Sur-Reply 2.) In support, Plaintiff contends that Defendants' reliance on the dismissal of the Fourth State Court Action fails because the dismissal is "based solely on the prior [discontinuance] of the [Second State Court Action]." (*Id.* at 3–4.)

Federal courts have "consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [the previous] action." *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (quoting *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008)); *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 22–23 (2d Cir. 2016) (affirming a district court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action for mortgage fraud was precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ." *Allen*, 449 U.S. at 96. To prove claim preclusion under New York law, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous

Case 2:21-cv-01629-JMA-ARL Document 153 Filed 10/07/25 Page 45 of 100 PageID #: 3605

action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see also Hereford Ins. v. Shelly*, 243 N.Y.S.3d 495, 496 (App. Div. 2025) ("One linchpin of *res judicata* is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been previously brought to a final conclusion." (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021))); *Pawling Lake Prop. Owners Ass'n v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to *res judicata*).

This action is not barred by *res judicata*. First, the Third State Court Action has no preclusive effect because the state court vacated its dismissal and reinstated all other claims it dismissed in the Third State Court Action in its entirety. *See Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) ("[A] judgment vacated or set aside has no preclusive effect." (quoting *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992)); *Xu v. City of New York*, 612 F. App'x 22, 26 (2d Cir. 2015) (quoting *Sheldon v. Khanal*, 396 F. App'x 737, 739 (2d Cir. 2010)); *see Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1146 (2d Cir. 1992) ("It is well-settled in this circuit that a vacated order has no collateral estoppel effect."); *Robbins v. Candy Digit. Inc.*, No. 23-CV-10619, 2025 WL 2391039, at *7 (S.D.N.Y. Aug. 18, 2025) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of conclusive effect, both as res judicata and as collateral estoppel." (quoting *Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 919 (S.D.N.Y. 1983))); *Leung v. Town of Oyster Bay*, No. 16-CV-4356, 2019 WL 5309995, at *4 (E.D.N.Y. Oct. 21, 2019) ("Indeed, a vacated

judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." (quoting *Schwartz v. Chan*, 142 F. Supp. 2d 325, 330 (E.D.N.Y. 2001))); *Philogene v. Duckett*, No. 17-CV-7224, 2018 WL 3946447, at *8 (S.D.N.Y. Aug. 16, 2018) ("A judgment vacated or set aside has no preclusive effect." (quoting *Zheng v. Liberty Apparel Co.*, 556 F. Supp. 2d 284, 294 (S.D.N.Y. 2008))).

Second, the Fourth State Court Action does not have preclusive effect because the Settlement Agreement and Release from the Second State Court Action specifically preserved Plaintiff's claims in this federal action, as the parties agreed that the dismissal of the Second State Court Action "[redacted]" (Settlement Agreement and Release 2 ¶ 2.) The discontinuance of the Second State Court Action was the basis of the dismissal of the Fourth State Court Action pursuant to *res judicata*. *See* Decision and Order 6, *N.Y. Packaging II LLC*, No. 615114/2025 (filed Dec. 29, 2025). Therefore, *res judicata* does not preclude this action because (1) the Settlement Agreement and Release provides that the discontinuance of the Second State Court Action [redacted] and (2) the dismissal of the Fourth State Court Action was based on the discontinuance of the Second State Court Action. *See Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 WL 7364116, at *7 n.5 (S.D.N.Y. Dec. 14, 2020) (rejecting the defendant's argument that *res judicata* barred the action where the settlement agreement "does not demonstrate [the p]laintiff's intent to abdicate his right to pursue his present claims, which were pending at the time the [s]ettlement [a]greement was executed"); *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 424 (E.D.N.Y. 2017) ("[I]t is of course common for

contracting parties or settling litigants to prohibit the assertion of one, some, or all affirmative defenses should there be subsequent litigation between them."); *Safflane Holdings, Ltd. v. Gagosian Gallery, Inc.*, No. 11-CV-1679, 2011 WL 7561258, at *1 (S.D.N.Y. Nov. 7, 2011) ("Parties are of course free, when settling a lawsuit, to include in their agreement specific provisions either preserving or waiving the assertion in future litigation not only of claims already asserted in the case being settled, but also of claims that, while not yet asserted, existed at the time of the settlement."); *Gentile v. Potter*, 509 F. Supp. 2d 221, 232 (E.D.N.Y. 2007) ("[T]he 'preclusive effect of a settlement is measured by the intent of the parties to the settlement, which is to be determined from the language of the agreement itself.'" (quoting *White v. U.S. Postal Serv.*, No. 04-CV-602, 2005 WL 408047, at *3 (E.D.N.Y. Feb. 16, 2005))); *Krol v. Yager-Krol*, 43 N.Y.S.3d 577, 578 (App. Div. 2016) ("[W]hen a party's right to maintain a cause of action has been expressly reserved in a prior action, '[i]t would be inequitable to preclude [the] party from asserting [the] claim under the principle of res judicata.'" (second, third, and fourth alterations in original) (quoting *Landau, P.C. v. LaRossa, Mitchell & Ross*, 862 N.Y.S.2d 316, 320 (2008))); *Bluebird Partners, L.P. v. First Fid. Bank, N.A., N.J.*, 671 N.Y.S.2d 7, 11 (App. Div. 1998) (concluding that the plaintiff was not precluded from pursuing action where the plaintiff reserved the right to pursue the action in a negotiated settlement agreement).

Because the state court actions do not bar this claim, the Court denies Defendants' motion for summary judgment based on *res judicata*.

**ii. Alleged alternative reasons to dismiss Plaintiff's claims**

Defendants argue that the Court should dismiss Plaintiff's claims for "alternative reasons." (Defs.' Mem. 12.) First, Defendants contend that that Plaintiff's misappropriation of trade secrets claim should be dismissed because Plaintiff (1) has not shown that it possessed trade secrets, (2) did not take reasonable measures to protect its trade secrets, and (3) has not

identified any misappropriation of trade secrets by Defendants. (*Id.* at 12–15.) Second, Defendants argue that Plaintiff's claim for breach of the Non-Compete and Non-Solicitation Agreement should be dismissed because Plaintiff has not shown that Mustang sold competitive products. (*Id.* at 15–16.) Third, Defendants contend that Plaintiff's claim for breach of contract regarding unsold inventory should be dismissed because (1) there is no common-law burden for a broker to buy unsold inventory, and (2) the claim fails pursuant to the statute of frauds. (*Id.* at 18.) Fourth, Defendants argue that Plaintiff's claim for tortious interference with prospective business relations fails because (1) Plaintiff has not shown that Defendants have committed a crime or act solely to harm it, and (2) Defendants had an economic interest in pursuing sales. (*Id.* at 19.) Fifth, Defendants contend that Plaintiff's claim for breach of fiduciary duty should be dismissed because (1) it is duplicative of its claims for breach of the Non-Compete and Non-Solicitation Agreement and (2) they did not make any decisions for Plaintiff. (*Id.* at 19–20.) Sixth, Defendants argue that Plaintiff's claim for negligence fails because no cause of action exists for negligent performance of a contract. (*Id.* at 20.) Seventh, Defendants contend that Plaintiff's claim for faithless servant should be dismissed because they neither were agents of Plaintiff nor had an employment relationship with Plaintiff. (*Id.* at 21.) Finally, Defendants argue that Plaintiff's claim for unjust enrichment should be dismissed because it is barred by their contractual relationship. (*Id.* at 22.)

Plaintiff argues that the Court should not dismiss its claims because they are supported by evidence. First, Plaintiff contends that it has (1) shown that it possessed pricing information, sales data, and technical product specifications, which constitute trade secrets, (2) taken reasonable measures to protect its trade secrets, and (3) identified misappropriation of trade secrets by Defendants because they sent trade secrets to competitors. (Pl.'s Opp'n 11–13.)

Second, Plaintiff argues that it has shown that Defendants breached the Non-Compete and Non-Solicitation Agreement by proffering evidence that Defendants sold competitive products prior to and after February of 2019. (*Id.* at 13–16.) Third, Plaintiff contends that (1) Defendants orally agreed to sell unsold inventory, and (2) the statute of limitations does not bar its claim for breach of this oral agreement. (*Id.* at 16.) Fourth, Plaintiff argues that Defendants' misappropriation of trade secrets constitutes interference with prospective business relations. (*Id.* at 16–17.) Fifth, Plaintiff contends that Defendants' role as Plaintiff's agents imposed on them a fiduciary duty. (*Id.* at 17–18.) Sixth, Plaintiff argues that its negligence claim is not barred because it arises from an independent legal duty. (*Id.* at 18.) Seventh, Plaintiff contends that its "paradigmatic agency relationship" with Defendants supports its faithless servant claim. (*Id.* at 19.) Finally, Plaintiff argues that its unjust enrichment claim is not barred because this action involves disputes about the applicability and terms of a contract. (*Id.*)

**1. The applicability of the Non-Compete and Non-Solicitation Agreement**

Plaintiff's claims for (1) misappropriation of trade secrets, (2) breach of contract, (3) tortious interference with prospective business relations, (4) fiduciary duty, (5) negligence, and (6) faithless servant all arise under the Non-Compete and Non-Solicitation Agreement. The parties disagree as to when the Non-Compete and Non-Solicitation Agreement terminated, and therefore, when Defendants' two-year post-termination liability period began to run.

Defendants contend that the two-year restriction was triggered in February of 2019, when Maierhoffer resigned from his position as sales manager with Plaintiff. (*See* Feb. 2019 Resignation Ltr. and Response.) Plaintiff contends that the Non-Compete and Non-Solicitation Agreement suggests that the two-year restriction was triggered in March of 2021, when Mustang terminated its broker relationship with Plaintiff. (*See* Mar. 2021 Resignation.)

Under New York law, a court must first decide "whether the contract is unambiguous with respect to the question disputed by the parties." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165 (2d Cir. 2024) (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *Valtus Cap. Grp., LLC v. Parq Equity Ltd. P'ship*, No. 21-184, 2022 WL 190755, at *1 (2d Cir. Jan. 21, 2022) (summary order) (quoting *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010)). "'[T]he key inquiry at the initial stage of interpreting a contract' is therefore 'whether it is ambiguous with respect to the issue disputed by the parties.'" *Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (alteration in original) (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010)); *Gary Friedrich Enters. v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) ("At the outset, the court must determine whether the language the parties have chosen is ambiguous, after giving all 'words and phrases . . . their plain meaning.'" (alteration in original) (citations omitted)).

"A contract is unambiguous if its language has 'a definite and precise meaning,' providing 'no reasonable basis for a difference of opinion.'" *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024) (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002)); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (recognizing that a contract provision is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion" (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007))). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Glob. Reins.*, 22 F.4th at 94 (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). Rather, a contract term is ambiguous if it "suggest[s]

more than one meaning when viewed objectively by a reasonably intelligent person." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) (quoting *Maverick Tube Corp.*, 595 F.3d at 466); *see also Glob. Reins.*, 22 F.4th at 94 ("[A]n ambiguity exists where the . . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (second alteration in original) (internal quotation marks omitted) (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000))); *Lockheed Martin*, 639 F.3d at 69 ("[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138–39 (2d Cir. 2000))). In determining whether a contract provision is unambiguous, a court must consider the contract as a whole. *See Flynn*, 120 F.4th at 1165–66 ("The contract should be 'read as a whole,' with every part 'interpreted with reference to the whole' in order, *inter alia*, 'to give effect to its general purpose,' 'to safeguard against adopting an interpretation that would render any individual provision superfluous,' and to ensure that particular words and phrases do not receive 'undue emphasis.'" (citations omitted)); *Glob. Reins.*, 22 F.4th at 95 ("When ascertaining the meaning of contractual language, 'it is important for the court to read the integrated agreement as a whole.'" (internal quotation marks omitted) (quoting *Lockheed Martin*, 639 F.3d at 69)). "If the document as a whole 'makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." *Glob. Reins.*, 22 F.4th at 95 (quoting *Lockheed Martin*, 639 F.3d at 69); *see also Westmoreland Coal Co. v.

*Entech, Inc.*, 100 N.Y.2d 352, 358 (2003) (stating contracts should be read "as a harmonious and integrated whole" and each part should be "interpreted with reference to the whole . . . to give effect to its general purpose" (quoting *Empire Props. Corp. v. Mfrs. Tr. Co.*, 288 N.Y. 242, 248 (1942))).

Construing the evidence in Plaintiff's favor, the Court finds a genuine dispute of material fact as to when the parties terminated the Non-Compete and Non-Solicitation Agreement. First, the Non-Compete and Non-Solicitation Agreement is ambiguous as to how it applies when the parties terminate and subsequently continue to engage in a business relationship. The Non-Compete and Non-Solicitation Agreement provides that it "shall remain in effect throughout the term of [Defendants'] relationship with [Plaintiff] as an independent contractor and for a period of two years thereafter." (Non-Compete and Non-Solicitation Agreement ¶ 1.) It also provides that this period of two years is triggered upon Defendants' voluntary termination of "[their] relationship with [Plaintiff] as an *independent contractor*." (*Id.* ¶ 5B (emphasis added).) However, the Non-Compete and Non-Solicitation Agreement does not address whether Defendants' two-year post-termination liability period is delayed when Maierhoffer terminated his business relationship with Plaintiff as a sales manager in February of 2019 but maintained a brokerage relationship with Plaintiff until March of 2021.

Second, the record is unclear as to whether Maierhoffer intended to terminate his relationship with Plaintiff as an "independent broker" when he resigned as Plaintiff's sales manager in February of 2019. Maierhoffer testified at his deposition that he terminated his relationship with Plaintiff as an "independent contractor" on two occasions: (1) on February 8, 2019, (Maierhoffer Dep. 60:11–15, 1/16/25, annexed to Weisbrod Opp'n Decl. as Ex. 2 and appended in Pl.'s 56.1 Resp. 81–103); and (2) "in early 2021," (*id.* at 62:1–4). However,

Maierhoffer's communications with Plaintiff appear to show that he left open the possibility of continuing a relationship as an independent contractor with Plaintiff. For example, Maierhoffer stated in the February 2019 Resignation Letter that he would "be happy to continue representing [Plaintiff] as an 'independent broker,'" which may not constitute a termination of his relationship with Plaintiff as an independent contractor because he left open the possibility of continuing an independent broker relationship. (Feb. 2019 Resignation Ltr. and Response.) In addition, [redacted] (Feb. 2019 Resignation Email, annexed to Weisbrod Opp'n Decl. as Ex. 3 and appended in Pl.'s 56.1 Resp. 104–08.)

Moreover, Plaintiff's Chief Executive Officer, Jeffrey Rabiea, testified at his deposition that the two-year post-termination provisions would have begun to run effective February 9, 2019 "[u]nless [Defendants] continued with the company," and as a result, the provisions "would be ongoing" until Defendants' "noncontinuing date." (Rabiea Dep. 70:19–24, annexed in Defs.' 56.1 Reply 15–18 as Ex. A.) In addition, Rabiea stated that "Defendants continuously sold products for [Plaintiff] throughout the transition from Maierhoffer serving as sales manager to Defendants serving as an independent sales representative, without interruption." (Rabiea Feb. 13, 2025 Decl. ¶ 14.) Similarly, Plaintiff's Chief Financial Officer, Michael Zapf, testified at his deposition that Maierhoffer continued the parties' relationship following February of 2019 and stated that he "[thought] that [Maierhoffer] was representing us as negotiations were ongoing." (Zapf Dep. 12:7–10, 13:18–22, annexed to Defs.' 56.1 Reply 19–23 as Ex. B.)

Based on the record, the Court concludes that genuine issues of material fact exist as to the terms of the Non-Compete and Non-Solicitation Agreement, and therefore, when the two-

year post-termination restrictions period applies. This dispute of material fact must be decided by a jury. *See Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) ("Where 'resolution of a dispute turns on the meaning of an ambiguous term or phrase,' summary judgment should usually be denied." (quoting *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011))).

**2. Misappropriation of trade secrets claim**

Defendants argue first, that the Court should grant their summary judgment motion on Plaintiff's claim for misappropriation under the DTSA and state law because Plaintiff has not shown that it possessed trade secrets. In support, Defendants contend that Plaintiff: (1) fails to identify a trade secret with particularity, as Plaintiff "continues to assert vague and conclusory allegations about pricing and product specifications," (Defs.' Mem. 12 (citing *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 271 (S.D.N.Y. 2021)), and the Non-Compete and Non-Solicitation Agreement only protects the "names and addresses of any of the customers or clients of [Plaintiff] or any other information pertaining to them," (*id.* at 14 (quoting Non-Compete and Non-Solicitation Agreement ¶ 5B)); and (2) fails to show that it took reasonable measures to keep its sales information secret, as Plaintiff "regularly exchanges sales information with clients and vendors," (Defs.' Reply 5–6). Second, Defendants argue that even if Plaintiff has shown that it possessed trade secrets, Plaintiff has not identified that Defendants misappropriated any of its trade secrets. (Defs.' Mem. 12–15.)

Plaintiff argues first, that it has shown that it possessed trade secrets, which are pricing information, sales data, and technical product specifications. Plaintiff contends that: (1) for example, its customer lists are a trade secret, as "it would be difficult to duplicate a customer list because it reflected individual customer preferences," (Pl.'s Opp'n 12 (quoting *General Security, Inc. v. Commercial Fire & Security, Inc.*, No. 17-CV-1194, 2018 WL 3118274, at *5 (E.D.N.Y.

June 25, 2018)); and (2) it took reasonable measures to protect its trade secrets, as its "pricing and customer information was maintained securely" through a dual-authentication system, and it revoked Defendants' access when the parties ended their independent contractor relationship,[22] (*id.* at 7 (citing Pl.'s 56.1 ¶ 13)). Second, Plaintiff argues that it has identified that Defendants misappropriated its trade secrets when (1) Maierhoffer sent Plaintiff's information to a competitor, Acorn East, and (2) Retail Business Services began buying paper bags through Defendants from a competitor, Barnes Paper, for which the bags were [redacted] than with Plaintiff. (*Id.* at 6–7.)

"A plaintiff claiming misappropriation of a trade secret must prove that (1) 'it possessed a trade secret,' and (2) the trade secret was used by defendant 'in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019) (quoting *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)). "The elements for a misappropriation claim under New York law [and federal law] are fundamentally the same." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020); *see Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *3 (2d Cir. Mar. 9, 2022) (concluding that because the plaintiff failed to plausibly allege a misappropriation of trade secrets claim under the DTSA, its "common-law misappropriation claim is inadequately pled for the same reason"); *Aptargroup, Inc. v. ARS Pharms., Inc.*, No. 25-CV-2545, 2026 WL 866954, at *3 (S.D.N.Y. Mar. 30, 2026) (quoting *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, No. 23-CV-9000, 2024 WL 3835264, at *3 (S.D.N.Y. Aug, 14, 2024))); *Stone Point Advisory, LLC v.*

*S&P Glob. Mkt. Intel., Inc.*, No. 25-CV-773, 2026 WL 866848, at *4 (S.D.N.Y. Mar. 30, 2026) (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob., Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022)). "Because of this similarity, the [c]ourt addresse[s] the trade secret misappropriation claims under federal and state law together at the summary judgment phase." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2022 WL 2757643, at *13 (S.D.N.Y. July 14, 2022).

Under the DTSA, a plaintiff must show that it is (1) "[a]n owner of a trade secret;" (2) the trade secret was "misappropriated"; and (3) "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *CargoSprint*, 2022 WL 701161, at *1; *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021); *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 28 (2d Cir. 2019); *Aptargroup*, 2026 WL 866954, at *2 (quoting *Adomni Inc. v. Cleartrust Media, LLC*, No. 23-CV-10338, 2026 WL 658446, at *7 (S.D.N.Y. Mar. 9, 2026)). Under New York law, "a plaintiff must show (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as the result of discovery by improper means." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 181 (2d Cir. 2023) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009)); *Stone Point Advisory*, 2026 WL 866848, at *4 (quoting *Pauwels*, 83 F.4th at 181).

In addition, the DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or the "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5). "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6); *Kairam*, 793 F.

App'x at 28 (quoting *id.*); *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 193 (E.D.N.Y. 2024) (quoting same); *Harley Marine NY, Inc. v. Moore*, 716 F. Supp. 3d 21, 30 (N.D.N.Y. 2024) (quoting *ExpertConnect, L.L.C. v. Fowler*, No. 18-CV-4828, 2019 WL 3004161, at *6 (S.D.N.Y. July 10, 2019)). The DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Better Holdco*, 666 F. Supp. 3d at 389 (internal quotation marks omitted) (citing *AUA Priv. Equity Partners, LLC v. Soto*, No. 17-CV-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)); *see Multi-State P'ship for Prevention, LLC v. Deloitte Consulting, LLP*, No. 24-CV-9013, 2026 WL 1146003, at *9 (S.D.N.Y. Apr. 28, 2026) (quoting *Better Holdco*, 666 F. Supp. 3d at 389); *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024) (quoting same).

**A. Possession of a trade secret**

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Chastain*, 145 F.4th at 293 n.2 (quoting Restatement (First) of Torts § 757 cmt. b (1939)); *Wabtec Corp.*, 559 F.3d at 117 (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)); *Haber*, 188 F.3d at 44 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997)); *Softel*, 118 F.3d at 968 (quoting Restatement (First) of Torts § 757 cmt. b (1939)).

The DTSA defines a "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if "(A) the owner thereof has taken reasonable measures to keep such information secret" and "(B) the information derives independent economic value, actual or

potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3); *Kairam*, 793 F. App'x at 27–28 (quoting *id.*); *Artisan Techs. LLC, v. Interlude U.S., Inc.*, No. 25-CV-7214, 2026 WL 2283056, at *3 (S.D.N.Y. Aug. 7, 2026) (quoting same); *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 153 (S.D.N.Y. 2025) (quoting same); *PleasrDAO v. Shkreli*, 804 F. Supp. 3d 362, 376 (E.D.N.Y. 2025) (quoting same); *Better Holdco*, 666 F. Supp. 3d at 384 (quoting same).

To determine whether information is a trade secret, New York courts consider:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Pauwels*, 83 F.4th at 181, n.2 (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993)); *Plug Power v. Shokrian*, --- F. Supp. 3d ---, ---, 2026 WL 2137614, at *9 (N.D.N.Y. July 24, 2026) (quoting *Iacovacci*, 437 F. Supp. 3d at 380), *appeal filed*, No. 26-2057 (2d Cir. July 28, 2026); *Shkreli*, 804 F. Supp. 3d at 376 (quoting same); *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224, 239 (E.D.N.Y. 2024) (quoting *Serling*, 492 F. Supp. 2d at 148); *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021) (quoting *Integrated Cash Mgmt. Servs.*, 920 F.2d at 173).

Construing the evidence in Plaintiff's favor, the Court finds that Plaintiff's price information, sales data, and technical product specifications are trade secrets.

**(1) Specificity**

"Under both the DTSA and New York law, a claimant bears the burden of identifying a purported trade secret with sufficient specificity." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792, 800 (2d Cir. 2023); *Sound Around, Inc. v. Friedman*, No. 24-CV-986, 2026 WL 972984, at *16 (S.D.N.Y. Apr. 10, 2026) (quoting *id.*), *appeal filed*, No. 26-1301 (2d Cir. May 11, 2026); *Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20-CV-2974, 2026 WL 772907, at *6 (S.D.N.Y. Mar. 19, 2026) (quoting same). Therefore, to survive summary judgment, "the party opposing summary judgment must be able to identify the alleged trade secret with sufficient specificity to make the moving party aware of what information it has allegedly misappropriated." *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2d Cir. 2018); *Beyond the Dog, LLC v. Salzer*, No. 24-CV-1439, 2026 WL 884140, at *5 (D. Conn. Mar. 31, 2026) (quoting *id.*); *Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc.*, No. 21-CV-4855, 2024 WL 522751, at *18 (S.D.N.Y. Feb. 9, 2024) (quoting same); *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014) ("Before analyzing whether [the p]laintiff had a trade secret, the [c]ourt first considers whether [the p]laintiff has described its trade secret with sufficient particularity, both at the time of disclosure and throughout the litigation."), *aff'd*, 610 F. App'x 69 (2d Cir. 2015).

Pricing information, sales data, and technical product specifications constitute trade secrets. *See Cont'l Indus. Grp., Inc. v. Altunkilic*, 788 F. App'x 37, 40–41 (2d Cir. 2019) (concluding that, *inter alia*, a "cost analysis sheet," "customer and supplier lists," "pricing and payment terms" is "routinely afforded trade secret protection"); *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("Confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law."); *Haber*, 188 F.3d at 44 (concluding that a "client

list, which contains the identities and preferences of its client contacts, constitutes a protectable trade secret"); *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176–77 (2d Cir. 1993) ("Compilations of information, traditionally viewed and protected under trade secret law, are items like customer and supplier lists and pricing and cost information."), *abrogated on other grounds, Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000); *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (concluding that a "customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret"); *Wollner v. PearPop Inc.*, No. 26-CV-3207, 2026 WL 1382956, at *2 (S.D.N.Y. May 18, 2026) ("Courts have found documents such as client or customer lists to warrant trade secret protection."); *Stone Point Advisory*, 2026 WL 866848, at *6 ("[A] customer contact list that required substantial time, effort and money to compile may be deemed a trade secret where it contains information that is not readily available." (quoting *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-CV-9779, 2020 WL 7774478, at *3 (S.D.N.Y. Dec. 30, 2020))); *BakeMark USA LLC v. Negron*, No. 23-CV-2360, 2024 WL 1075280, at *19 (S.D.N.Y. Jan. 12, 2024) ("The courts routinely protect similar customer lists, as well as customer order history and pricing and cost information, as trade secrets."), *report and recommendation adopted*, 2024 WL 3385641 (S.D.N.Y. July 12, 2024); *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 17-CV-589, 2021 WL 467110, at *8 (S.D.N.Y. Feb. 9, 2021) ("Data relating to pricing and costs are protectable."); *Kraus USA, Inc. v. Magarik*, No. 17-CV-6541, 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020) (concluding that "information on upcoming designs, sales data, e-commerce data, and other commercially sensitive information including customer lists, vendor relationships, the identity of contractual counterparties, internal cost structure and operating expenses, and e-commerce knowledge" constituted protectable trade

secrets); *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 569 (S.D.N.Y. 2016) (concluding that "customers sales information, design packages, and production packages for past, present, and future business . . . taken as a whole is a trade secret critical to plaintiff's business" (citation omitted)).

Plaintiff has described its trade secret with sufficient particularity because it alleges that its price information, sales data, and technical product specifications are trade secrets, and courts have held that price information, sales data, and technical product specifications are protectable trade secrets. *See In re Dana Corp.*, 574 F.3d at 152; *Haber*, 188 F.3d at 44; *Wollner*, 2026 WL 1382956, at *2; *Negron*, 2024 WL 1075280, at *19; *Magarik*, 2020 WL 2415670, at *5. In addition, Plaintiff has described its trade secret with sufficient particularity because it states that "the parties' relationship was governed primarily by oral agreements and common industry standards," and its "understanding and common industry understanding" shows that Defendants had an obligation to keep Plaintiff's information confidential. (Pl.'s Opp'n 2.) Rabiea states that sales representatives are supposed to (1) "be loyal to sellers they represent, not to the potential buyers" and (2) "preserve the confidentiality of confidential information." (Rabiea Feb. 13, 2025 Decl. ¶ 21.)

Defendants' argument that Plaintiff fails to identify a trade secret with particularity is unpersuasive because alleging "pricing information, sales data, and technical product specifications" is sufficient to "identify the alleged trade secret with sufficient specificity to make the moving party aware of what information it has allegedly misappropriated." *Viber Media*, 758 F. App'x at 49; *cf. Salzer*, 2026 WL 884140, at *8 (granting summary judgment in favor of the defendants where the plaintiff alleged its trade secret was a questionnaire but "failed to provide the specificity necessary to assess its trade secret, including but not limited to

clarifying what is unique about its alleged trade secret" and, therefore, "there [was] no genuine issues of material fact to be tried as to these claims"); *Hayden v. Machs.*, No. 21-CV-2485, 2025 WL 1697021, at *13 (S.D.N.Y. June 17, 2025) (concluding that the plaintiff did not have a protectable trade secret where the plaintiff "fail[ed] to define the exact elements that comprise his trade secret . . . [and] how these various components combine to form a trade secret"); *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926, 2020 WL 1242616, at *9 (E.D.N.Y. Mar. 16, 2020) (granting summary judgment in favor of the defendants where the plaintiff alleged its trade secret was a medical bill review software but presented evidence that "merely list[ed] the functions of [its software]" and, therefore, failed to "present evidence of how [the software] function[s] together in a unique way"); *Benitez v. Valentino U.S.A., Inc.*, No. 19-CV-11463, 2024 WL 1347725, at *19 (S.D.N.Y. Mar. 29, 2024) (declining to grant summary judgment in the plaintiff's favor where the plaintiff's "descriptions of the documents certainly suggest that they are confidential" because "'confidential information' is not equivalent to 'trade secrets'" (quoting *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540, 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018))).

Based on the evidence proffered by Plaintiff, the Court concludes that Plaintiff's pricing information, sales data, and technical product specifications are trade secrets. *See Catalyst Advisors*, 2024 WL 522751, at *23 (finding the plaintiff established trade secrets where the record showed customer lists reflecting specific preferences of the plaintiff's client companies); *Roller Bearing Co. of Am., Inc. v. Multicut N. Am., Inc.*, No. 18-CV-1212, 2023 WL 7277244, at *17 (D. Conn. Sep. 29, 2023) (concluding that the plaintiff has described its trade secret with sufficient particularity where the plaintiff described how the drawings were unique and contained a "novel combination of design features"); *Iacovacci v. Brevet Holdings, LLC*, No. 18-CV-8048,

2023 WL 2631966, at *12 (S.D.N.Y. Mar. 24, 2023) (concluding that trade secrets were "clearly defined" where forty-one categories of trade secrets were identified in deposition, which included "investor lists, presentation materials, valuation methodologies, and underwriting documentation"); *see also Friedman*, 2026 WL 972984, at *16 (concluding that there were triable issues as to the existence of a trade secret where the plaintiff proffered pricing information, profit calculations, and "confidential reports identifying its top-selling and highest-profit products" as trade secrets); *Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20-CV-2974, 2025 WL 2695689, at *32 (S.D.N.Y. Sep. 22, 2025) (concluding that there was a triable issue as to the existence of a trade secret where the documents at issue "contain[ed] proprietary methodologies and frameworks . . . developed after spending many years working on hundreds of market access projects and cultivating relationships with valuable sources of information"); *Henessey Food Consulting LLC v. Prinova Sols., LLC*, No. 20-CV-806, 2024 WL 4291312, at *7 (N.D.N.Y. Sep. 24, 2024) (concluding that there was a triable issue as to the existence of a trade secret where the plaintiff identified "information which, individually and in combination, constitute trade secrets," including the company's "pricing strategy" and "target customers"); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 235 (S.D.N.Y. 2013) (concluding that there was a triable issue as to the existence of a trade secret regarding client and sales data).

**(2) Reasonable measures**

Reasonable measures can include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." *Catalyst Advisors*, 602 F. Supp. 3d at 675 (citation omitted). Economic value "lies in the competitive advantage over others that [the

plaintiff] enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984). New York law defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 453 (2018) (quoting *Ashland Mgmt.*, 82 N.Y.2d at 407); *Premium Prods., Inc. v. O'Malley*, 251 N.Y.S.3d 296, 304 (App. Div. 2026) (quoting same); *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 690–91 (App. Div. 2015) (quoting same); *see Shokrian*, 2026 WL 2137614, at *9 (quoting *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 312 (S.D.N.Y. 1999)); *Gelardi*, 732 F. Supp. 3d at 239 (quoting *Cardiocall, Inc. v. Serling*, 492 F. Supp. 2d 139, 148 (E.D.N.Y. 2007)).

Plaintiff sufficiently shows that it took reasonable measures to protect trade secrets. As a general matter, "a plaintiff need only point to evidence of protective measures" to defeat a motion for summary judgment. *See McKeon Rolling Steel Door Co. v. U.S. Smoke & Fire Corp.*, No. 23-CV-8720, 2026 WL 865699, at *8 (S.D.N.Y. Mar. 30, 2026) ("[T]o defeat a motion for summary judgment, a plaintiff need only point to evidence of protective measures, and then it becomes the jury's task to evaluate whether they were reasonable." (quoting *Better Holdco*, 666 F. Supp. 3d at 385)), *appeal dismissed*, No. 26-1184, 2026 WL 2211176 (2d Cir. May 15, 2026); *Kairam v. W. Side GI, LLC*, No. 18-CV-1005, 2025 WL 2935321, at *13 (S.D.N.Y. June 21, 2025) (quoting same), *report and recommendation adopted*, 2025 WL 2778915 (S.D.N.Y. Sep. 30, 2025); *Hayden v. Int'l Bus. Machs. Corp.*, No. 21-CV-2485, 2025 WL 1697021, at *17 (S.D.N.Y. June 17, 2025) (quoting same); *Henessey Food Consulting*, 2024 WL 4291312, at *7 (quoting *Better Holdco*, 666 F. Supp. 3d at 385).

First, Plaintiff proffers evidence that it does not make its trade secrets publicly available. Regarding pricing information, Rabiea states in a declaration that Plaintiff does not publicly disclose its pricing information on its website. (Rabiea Feb. 13, 2025 Decl. ¶ 80.) In addition, Rabiea disputes Defendants' proffered evidence showing Plaintiff's public disclosure of its pricing information, which is a screenshot from a website listing the prices of Plaintiff's products. (*Id.* ¶¶ 78–81; Website Screenshot, annexed to Fix Decl. 57–60 as Ex. H.) In his declaration, Rabiea stated that this exhibit is not a screenshot from Plaintiff's website; instead, this exhibit is a screenshot from Clark Products, Plaintiff's customer, which resells Plaintiff's products. Rabiea states that the prices listed on the Clark Products' website are not the same as Plaintiff's prices. (Rabiea Feb. 13, 2025 Decl. ¶¶ 78–79.) In his deposition, Rabiea testified that this was not a confidentiality violation because Clark Products is a reseller and, therefore, it "ha[s] a right to put [Plaintiff's products] on their website and sell it." (Rabiea Dep. 54:1–3, 12/17/24, annexed in Fix Decl. 31–47 as Ex. F; *see id.* at 52:17–54:3.) Regarding customer information, Rabiea stated that Plaintiff's website "does not list proprietary customer specifications, only generic products that [Plaintiff] sells." (Rabiea Feb. 13, 2025 Decl. ¶ 81.) Rabiea testified that product specifications were made publicly available for items that "anyone can buy." (Rabiea Dep. 54:9–20, 12/17/24.)

Second, Plaintiff has proffered evidence that it expended effort in protecting its pricing information, sales data, and technical product specifications, including (1) requiring "two layers of user credentials to access" Plaintiff's database and (2) requiring employees to sign confidentiality agreements. (Pl.'s 56.1 Resp. ¶¶ 56, 79; Pl.'s 56.1 ¶ 13.) In addition, Zapf states in his declaration that Plaintiff protects the confidentiality of its trade secrets by storing them on a software program, for which access is limited and requires dual authentication. (Zapf Decl. ¶

13.) *See Friedman*, 2026 WL 972984, at *16 (concluding that there was a triable issue as to reasonable measures where the plaintiff "introduced evidence of such efforts, including its [p]olicy and [p]ractice [g]uide — which requires company information, pricing, and proprietary data to be kept strictly confidential — and the data privacy procedures it employs to protect its business information"); *Precision Med. Grp.*, 2025 WL 2695689, at *32 (concluding that there was a triable issue as to reasonable measures where the plaintiffs required employees to "use user IDs and passwords to access the information" and limiting access to employees who "had a need to know"), *appeal withdrawn*, No. 26-1093, 2026 WL 2138546 (2d Cir. July 17, 2026); *Kairam*, 2025 WL 2935321, at *14 (concluding that there was a triable issue as to reasonable measures where the plaintiff "limit[ed] the [trade secret] to necessary personnel and only disclos[ed] elements to people who understood that the [trade secret] must be kept confidential and that 'each person working in the process [was] told not to share any of the information with anyone outside the office and are given unique logins and passwords'" (fifth alteration in original)); *Roller Bearing Co. of Am.*, 2023 WL 7277244, at *21 (concluding that there was a triable issue as to reasonable measures where the plaintiff "required employees to sign standard employment agreements containing confidentiality provisions and trained employees on identifying and maintaining trade secrets"); *Better Holdco*, 666 F. Supp. 3d at 385 (concluding that there was a triable issue as to reasonable measures where the plaintiff (1) protected the information with two-factor authentication and (2) required its employees to sign an agreement affirming that they will not disclose the company's "proprietary information or trade secrets").

Plaintiff's proffered evidence of two-factor authentication and confidentiality agreements as protective measures is sufficient to defeat summary judgment as to reasonable measures. *See McKeon Rolling Steel Door Co.*, 2026 WL 865699, at *8 ("[T]o defeat a motion for summary

judgment, a plaintiff need only point to evidence of protective measures . . . ." (quoting *Better Holdco*, 666 F. Supp. 3d at 385)). Therefore, the determination of whether Plaintiff's proffered protective measures are reasonable is a question for the jury. *See id.* (stating that the question of whether protective measures are reasonable is for the jury); *Kairam*, 2025 WL 2935321, at *13 (same); *Hayden*, 2025 WL 1697021, at *17; *Catalyst Advisors*, 2024 WL 522751, at *21 (same); *Better Holdco*, 666 F. Supp. 3d at 385 (same).

Because Plaintiff specified trade secrets and proffered evidence of protective measures, Plaintiff has sufficiently shown that it possessed trade secrets, constituting of pricing information, sales data, and technical product specifications.

**B. Misappropriation**

When viewing the evidence in Plaintiff's favor, there is a triable issue as to whether Defendants misappropriated Plaintiff's trade secrets, because there is a triable issue as to when the Non-Compete and Non-Solicitation Agreement became effective, as discussed *supra* Section II.c.ii.1. Defendants' obligations ran until either (1) at the earliest, February 9, 2021, which is two years after Maierhoffer resigned from his position as Plaintiff's sales manager or (2) at the latest, March 2, 2023, which is two years after Defendants' second termination of their relationship with Plaintiff. The Court therefore considers whether Defendants misappropriated trade secrets between August of 2016, the Non-Compete and Non-Solicitation Agreement's effective date, and March of 2023, the latest date when the two-year post-termination restriction period could have ended.

First, Plaintiff produced several emails between Maierhoffer and competitor Acorn East, where Maierhoffer provides Plaintiff's pricing information, sales information, and invoices to Acorn East. For example: (1) on March 18, 2021, Maierhoffer sent pricing information, sales

information, and invoices stating, “thank you [Plaintiff] for the information,” (Mar. 18, 2021 Acorn East Email, annexed to Pl.’s Ltr. as Ex. 7, Docket Entry No. 106-2); (2) on June 14, 2021, Maierhoffer sent pricing information, (June 14, 2021 Acorn East Email, annexed to Pl.’s Ltr. as Ex. 18, Docket Entry No. 106-6); (3) on June 23, 2021, Maierhoffer sent pricing, sales, and inventory information, (June 23, 2021 Acorn East Email, annexed to Pl.’s Ltr. as Ex. 8, Docket Entry No. 106-3); and (4) on October 1, 2021, Maierhoffer sent sales information, which Plaintiff contends was used to undercut and take business away from it.[23] Fourth, Plaintiff argues that in February of 2021, Retail Business Services copied Rabiea on an email, which was Plaintiff’s customer, indicating that Retail Business Services, “which previously had been buying paper bags from [Plaintiff] through Defendants, now was purchasing them from a competitor, Barnes Paper, through Defendants,” and [redacted].” (Pl.’s Opp’n 7; Retail Business Services Purchase Orders, annexed to Weisbrod Opp’n Decl. as Ex. 9 and appended in Pl.’s 56.1 Resp. 118–132.)

Defendants’ argument that Plaintiff cannot rely on speculation to allege that Defendants disclosed trade secrets is unpersuasive because Plaintiff has presented circumstantial evidence and “‘circumstantial evidence [ ] may be used to prove misappropriation’ at the summary judgment stage.” *Catalyst Advisors*, 2024 WL 522751, at *24 (alteration in original) (quoting *Medidata Sol.*, 2021 WL 467110, at *11)); *see GlobalFoundries U.S. Inc. v. Int’l Bus. Machs. Corp.*, No. 23-CV-3348, 2024 WL 4452146, at *5 (S.D.N.Y. Oct. 9, 2024) (“[I]t is ‘well-recognized’ that plaintiffs need not rely on direct evidence and can instead ‘construct a web of

perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences [of misappropriation].'" (second alteration in original) (quoting *ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645, 2017 WL 4403308, at *13 (S.D.N.Y. Oct. 2, 2017))); *BakeMark USA LLC v. Negron*, No. 23-CV-2360, 2024 WL 3385641, at *4 (S.D.N.Y. July 12, 2024) ("Misappropriation can often only be proven by circumstantial evidence."); *Medidata Sol.*, 2021 WL 467110, at *11 (stating that circumstantial evidence "may be used to prove misappropriation").

Plaintiff establishes a genuine issue of material fact as to whether Defendants misappropriated trade secrets by proffering emails between Defendants and Plaintiff's competitors where Defendants shared Plaintiff's trade secrets. Because Plaintiff (1) possessed a trade secret and (2) establishes a genuine issue of material fact as to whether Defendants misappropriated Plaintiff's trade secrets, the Court denies Defendants' motion for summary judgment as to Plaintiff's misappropriation of trade secrets claim.

**3. Breach of the Non-Compete and Non-Solicitation Agreement claim**

Defendants argue that the Court should grant their summary judgment motion on Plaintiff's claim for breach of the Non-Compete and Non-Solicitation Agreement because Plaintiff has failed to establish that Mustang breached the Non-Compete and Non-Solicitation Agreement by disclosing information and/or selling competing products. First, Defendants contend that Plaintiff's claim is barred by its prior breach of the parties' commission agreements, which is Plaintiff's failure to pay Mustang $200,000 in commissions. (Defs.' Mem. 15.) Second, Defendants argue that Mustang did not breach the Non-Compete and Non-Solicitation Agreement because, from February 9, 2019 to February 9, 2021, "all Mustang sales were pre-

Case 2:21-cv-01629-EK-ARL Document 153 Filed 10/07/25 Page 70 of 100 PageID #: 3630

existing clients," which was carved out by the Non-Compete and Non-Solicitation Agreement. (*Id.* at 16.)

Plaintiff argues first, that there is a triable dispute as to which party breached an agreement first. In support, Plaintiff contends that "Defendants were selling competing products for [Plaintiff]'s competitors before the parties' commission disputes arose." (Pl.'s Opp'n 13.) Moreover, Plaintiff argues that its alleged failure to pay commissions "cannot excuse Defendants' breach of the Non-Compete [and Non-Solicitation] Agreement because commissions were not material to, or even addressed in, [the Non-Compete and Non-Solicitation] Agreement." (*Id.* at 14.) Third, Plaintiff contends that it has evidence that Defendants sold competing products for Plaintiff's competitors "before February 8, 2019, within the next two years, and for two years following March 2, 2021." (*Id.* at 14–15.) In support, Plaintiff argues that Defendants terminated their relationship with Plaintiff on March 2, 2021, because Defendants "expressly continued the relationship after February 8, 2019 without interruption or changes to the relationship bearing on the obligations set forth in the Non-Compete [and Non-Solicitation] Agreement." (*Id.* at 15.) Fifth, Plaintiff contends that it has evidence of its damages.

"Under New York law, to make out a viable claim for breach of contract, a plaintiff must prove (1) 'the existence of a contract,' (2) 'adequate performance of the contract by [the plaintiff],' (3) 'breach of the contract by [the defendant],' and (4) 'damages.'" *N.A. Photon Infotech Ltd. v. ZoomInfo LLC*, Nos. 22-1979, 22-2074, 2024 WL 4799843, at *1 (2d Cir. Nov. 15, 2024) (summary order) (alterations in original) (quoting *24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 429 F.3d 39, 41–42 (2d Cir. 2005)); *see Up State Tower Co. v. Town of Cheektowaga*, No. 24-165, 2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (summary order) ("A breach of contract

Case 2:21-cv-01629-KEM-ARL Document 153 Filed 10/07/25 Page 71 of 100 PageID #: 3631

claim under New York law has four elements: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011))); *Hernandez v. Kwiat Eye and Laser Surgery, PLLC*, No. 23-7679, 2024 WL 5116365, at *5 (2d Cir. Dec. 16, 2024) (summary order) ("To sustain a breach-of-contract claim under New York law, a plaintiff must show: (1) a valid contract; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004))).

When viewing the evidence in Plaintiff's favor,[24] there is a triable issue as to whether Defendants violated the Non-Compete and Non-Solicitation Agreement. Picone's Report states

[24] The Court notes that Defendants argue that Plaintiff has failed to provide actual evidence that Defendants engaged in competitive conduct in violation of the Non-Compete and Non-Solicitation Agreement. In response, Plaintiff filed a motion *in limine* pursuant to Rule 37 of the Federal Rules of Civil Procedure, asking for the Court to sanction Defendants for their alleged failure to produce evidence of competitive conduct by precluding Defendants from offering evidence that Defendants did not engage in competitive conduct. (*See* Pl.'s Mot. in Limine.) Plaintiff argues that the Court should impose sanctions pursuant to Rule 37(b) because Defendants failed to produce Plaintiff's requested documents, including invoices for transactions between Defendants and Plaintiff's competitors. (*See id.*) However, Defendants' alleged failure to produce the requested documentation should have been addressed during discovery. Defendants argue that the documents produced by Defendants and the competitor-supplier "identify every product that Mustang sold," and "[a] motion *in limine* cannot serve as 'a substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier.'" (Defs.' Opp'n to Pl.'s Mot. in Limine 4, 9 (citation omitted).) In support, Defendants contend that Plaintiff "subpoenaed [the competitor-supplier] documents in 2021 and had ample time to gather [the competitor-supplier's] evidence, depose [the competitor-supplier's] agents, and litigate disputes over production." (*Id.* at 9.) In addition, Defendants contend that the court's order extending discovery by sixty days cannot be the basis for the Court to impose sanctions pursuant to Rule 37(b) because the order "does not declare Defendants in violation of a prior order," and Plaintiff did not: (1) "file a Rule 37 motion addressing the [competitor-supplier] production"; or (2) "ask to reopen or extend discovery after Maierhoffer's January [of] 2025 deposition." (*Id.* at 10.)

Because Plaintiff's motion for sanctions pursuant to Rule 37 does not arise from Defendants' violation of any court order, the Court dismisses Plaintiff's motion. *See Jennette v. United Parcel Serv., Inc.*, No. 22-CV-10783, 2024 WL 3318120, at *2 (S.D.N.Y. June 25, 2024)

that between February of 2019 and March of 2023, Defendants engaged in "competitive sales of at least $42 million," (Picone Report 8; *see* Rabiea Feb. 13, 2025 Decl. ¶ 72 (stating that he obtained information from Picone that "Defendants sold many millions of dollars' worth of products on behalf of [Plaintiff]'s competitors")), which may constitute a breach if Defendants engaged in prohibited competitive sales during the liability period.

Based on the Court's determination that Plaintiff has proffered sufficient evidence to establish a genuine issue of material fact as to whether Defendants breached the Non-Compete and Non-Solicitation Agreement by engaging in competitive sales, the Court rejects Defendants' argument that Plaintiff fails to plead causation and damages. (*See* Defs.' Mem. 23–24.) Plaintiff proffers evidence that Defendants engaged in "competitive sales of at least $42 million," (Picone Report 8), which is sufficient to establish a genuine issue of material fact as to whether Plaintiff incurred damages resulting from Defendants' breach of the Non-Compete and Non-Solicitation Agreement.

**4. Breach of the oral agreement claim**

Defendants argue that the Court should grant their motion for summary judgment on Plaintiff's claim for breach of oral agreement because there is no common-law burden "on a

(denying the plaintiff's motion for sanctions under Rule 37 because "it does not stem from [the d]efendant's violation of any court order" and "[a] district court may impose sanctions under Rule 37(b) for noncompliance with 'a clearly articulated order of the court requiring specified discovery'" (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991))); *Carmody v. N.Y. Univ.*, No. 21-CV-8186, 2023 WL 5622867, at *4 (S.D.N.Y. Aug. 31, 2023) (concluding that the plaintiff "does not identify" any order that the defendants defied "that would trigger mandatory sanctions under Rule 37(b)"); *Smith v. Cordero*, No. 21-CV-2712, 2023 WL 3511294, at *3 (S.D.N.Y. Apr. 19, 2023) ("[The p]laintiff has not identified any [c]ourt order that [the d]efendants have violated; accordingly, Rule 37(b) does not apply as a basis for [the p]laintiff's motion for sanctions."); *Susana v. N.Y. Waterway*, 662 F. Supp. 3d 477, 493 (S.D.N.Y. 2023) (denying the defendants' motion for sanctions under Rule 37 because it did "not stem from the violation of any court order").

sales agent to buy products he could not sell." (Defs.' Mem. 18.) Defendants also argue that Plaintiff's unsold inventory claim fails under the statute of frauds.[25] (*Id.*)

Plaintiff argues that Defendants orally agreed to sell Plaintiff's unsold inventory to other customers. (Pl.'s Opp'n 16.)

When viewing the evidence in Plaintiff's favor, there is a triable issue as to whether the parties orally agreed that Defendants would sell Plaintiff's unsold inventory. As Defendants argue, the record contains no evidence of communication between the parties indicating whether they intended to be bound by an oral agreement. Moreover, it is undisputed that the parties entered into the Non-Compete and Non-Solicitation Agreement, which suggests that the parties would have similarly done so for the alleged oral contract.

However, Plaintiff raises a genuine issue of material fact as to the existence of an oral agreement to sell unsold inventory. First, Rabiea states that "[t]he parties' contractual relationship was generally governed by oral agreements," (Rabiea July 16, 2025 Decl. ¶ 8), and that "Defendants entered into an oral agreement with [Plaintiff] to sell the inventory to

[25] Plaintiff argues that the statute of frauds is inapplicable because (1) it seeks compensation arising from Defendants' breach of oral agreement and, therefore, is not asking Defendants to "'buy' unsold inventory" and (2) the parties had a "service contract[], not a contract to buy goods." (Pl.'s Opp'n 16 (citing *Rielly Co. v. Lisa B. Inc.*, 586 N.Y.S.2d 668 (App. Div. 1992)).) The Court finds that Defendants cannot raise a statute of frauds defense because they failed to raise it in their answer, and therefore, Defendants waived this defense. Rule 8(c)(1) provides that "[i]n respon[se] to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . statute of frauds." "[A] failure to plead an affirmative defense as required by [Rule] 8(c) results in the waiver of that defense and its exclusion from the case." *Tereshchenko v. Karimi*, 102 F.4th 111, 128 (2d Cir. 2024) (second alteration in original) (citation omitted); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014) ("[F]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." (quoting *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984)); *Berris v. Choi*, No. 23-CV-4305, 2025 WL 2548743, at *5 (S.D.N.Y. Sep. 4, 2025) (quoting *Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 889 F.2d at 1253)). The Court therefore rejects Defendants' statute of frauds argument.

[Plaintiff]'s customers but did not," (Rabiea Feb. 13, 2025 Decl. ¶ 75). Second, Rabiea testified at his deposition that Maierhoffer directed Rabiea to not contact a customer regarding unsold inventory because Maierhoffer "would handle it or sell it to someone else." (Rabiea Dep. 44:20–45:1, 12/17/24; *see id.* at 45:16–23.) Rabiea's testimony creates a genuine issue of material fact. *See Knox v. CRC Mgmt. Co.*, 134 F.4th 39, 49 (2d Cir. 2025) (concluding non-movant may rely on his own testimony, including "sworn statements made in depositions or declarations under penalty of perjury," to create a genuine issue of material fact); *Padmore v. SDH Servs. W., LLC*, No. 24-CV-6872, 2025 WL 2783191, at *4 (E.D.N.Y. Sep. 30, 2025) ("Declarations are properly considered as evidence on a motion for summary judgment when they set forth specific facts based on a party's personal knowledge." (quoting *Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 431, 464 n.208 (S.D.N.Y. 2012))); *Kramer v. Remley*, No. 01-CV-303, 2002 WL 31323823, at *2 (S.D.N.Y. Oct. 16, 2002) (concluding that an affidavit attesting to the existence of an oral agreement was sufficient to create a genuine issue of material fact).

Because Plaintiff establishes a genuine issue of material fact as to whether Defendants orally agreed to sell Plaintiff's unsold inventory, the Court denies Defendants' motion for summary judgment as to Plaintiff's breach of oral agreement claim.

#### 5. Tortious interference with prospective business relations claim

Defendants argue that the Court should grant their summary judgment motion on Plaintiff's claim for tortious interference with prospective business relations because (1) Plaintiff does not show that Defendants committed a crime or act solely to harm it and (2) Defendants had an economic interest in pursuing sales, which are commissions. (Defs.' Mem. 18–19.)

Plaintiff argues that it has established tortious interference with its business relations because "Defendants used improper means by misappropriating trade secrets and violating other duties." (Pl.'s Opp'n 17.)

Under New York law, to state a claim for tortious interference with business relations, "a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Pride Techs., LLC v. Khublall*, No. 21-2225, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (summary order) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015)); *Grifols, S.A. v. Yu*, No. 24-CV-576, 2025 WL 1531713, at *21 (S.D.N.Y. May 29, 2025) (quoting *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 280 (S.D.N.Y. 2024)); *see also Fika Midwifery PLLC v. Indep. Health Ass'n., Inc.*, 173 N.Y.S.3d 761, 765 (App. Div. 2022) (identifying the same four requirements (quoting *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (App. Div. 2009))). A defendant must have engaged in "conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 107 (2d Cir. 2012) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004)); *Blast Off Media, Inc. v. Downtown Music Cap., LLC*, No 25-CV-9363, 2026 WL 2254614, at *14 (S.D.N.Y. Aug. 5, 2026) (quoting same); *Rose Leaf Cleaning, Inc. v. Sonder Hosp. USA, Inc.*, No. 22-CV-7462, 2024 WL 3937600, at *12 (S.D.N.Y. Aug. 26, 2024) (quoting same). "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific . . . business relationship.'" *16 Casa Duse*, 791 F.3d at 262 (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (App. Div. 1992)); *Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*, No. 25-CV-5980, 2026 WL 1786445, at *7 (S.D.N.Y. June 22, 2026) (collecting cases); *Espinoza v. CGJC*

*Holdings LLC*, No. 23-CV-9133, 2025 WL 459913, at *4 (S.D.N.Y. Feb. 11, 2025) (quoting *McGill*, 582 N.Y.S.2d at 95). "[T]he plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered." *Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*, 91 N.Y.S.3d 503, 505 (App. Div. 2019) (first citing *N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 61 N.Y.S.3d 136, 141 (App. Div. 2017); then citing *Bus. Networks of N.Y., Inc. v. Complete Network Sols., Inc.*, 696 N.Y.S.2d 433, 435 (App. Div. 1999); and then citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S.2d 80, 93 (App. Div. 1982), *aff'd*, 59 N.Y.2d 314 (1983)); *see SlackPass, Inc. v. Frosted, Inc.*, No. 23-CV-6393, 2025 WL 1004854, at *17 (S.D.N.Y. Mar. 31, 2025) (quoting *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (App. Div. 2020)); *JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp. 3d 240, 258 n.4 (S.D.N.Y. 2023) (same).

In addition, the New York Court of Appeals has explained that "'a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage." *Hernandez*, 2024 WL 5116365, at *4 (quoting *Carvel*, 3 N.Y.3d at 190). "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" and "extreme and unfair economic pressure." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (first quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980); and then quoting *Carvel*, 3 N.Y.3d at 190); *Kohler Co. v. Signature Plumbing Specialties LLC*, No. 23-CV-9686, 2024 WL 4880069, at *5 (S.D.N.Y. Nov. 25, 2024) (same). If the defendant's "motive in interfering . . . was normal economic self-interest," the defendant

did not use unlawful means. *See Carvel*, 3 N.Y.3d at 190; *Cartiga, LLC v. Aquino*, No. 24-CV-1014, 2025 WL 388804, at *11 (S.D.N.Y. Feb. 4, 2025).

The Court grants Defendants' motion for summary judgment and dismisses Plaintiff's tortious interference with prospective business relations claim because Plaintiff does not proffer evidence that establishes the first element — that it had a "reasonable probability" of entering into a business relationship with a third party. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018) ("To establish the first element of a claim for tortious interference with a prospective business relationship, the plaintiffs must demonstrate that they had a reasonable probability of entering into a business relationship with a third party."). Plaintiff claims that Defendants interfered with Plaintiff's sales of private-label products. Therefore, to establish the first element, Plaintiff is required to show that it had a "reasonable probability" of selling private-label products to a third-party. However, Plaintiff fails to demonstrate, and has only speculated, that it would have sold private-label products. For example, Rabiea stated multiple times in his declarations that, "[h]ad Defendants brought requests for bids to [Plaintiff] for products that compete with [Plaintiff's], as they were supposed to, [Plaintiff] could have and would have fulfilled the orders." (Rabiea Feb. 13, 2025 Decl. ¶¶ 25, 64, 72; *see* Rabiea July 16, 2025 Decl. ¶ 25.) Rabiea also stated in his declaration that "[Plaintiff] could have competed successfully on price, quality, and product specifications for private label bags" based on its (1) successful competition on "price, quality, and product specifications for industrial products sold in bulk" and (2) "experience selling bags . . . [and] a variety of private label products," but Rabiea does not proffer evidence that Plaintiff even engaged in competition for private-label products. (Rabiea July 16, 2025 Decl. ¶ 26.)

Plaintiff's statements are insufficient to show business relations because Plaintiff does not present any evidence of interference with a specific business relationship. *See 16 Casa Duse*, 791 F.3d at 262 ("New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific . . . business relationship.'" (quoting *McGill*, 582 N.Y.S.2d at 95)); *Gym Door Repairs*, 331 F. Supp. 3d at 240 ("The plaintiffs have offered no evidence that they had a reasonable probability of entering into maintenance or repair contracts with any school districts other than those for whom they actually did such work."); *cf. Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309, 2021 WL 293568, at *12 (S.D.N.Y. Jan. 28, 2021) (finding that the plaintiff demonstrated "a reasonable probability of entering into a business relationship with a third party" where the defendant's personnel "noted that a potential customer was going to purchase a subscription to [the plaintiff's product] unless [the defendant] was able to pitch its own competing product" (quoting *Gym Door Repairs*, 331 F. Supp. 3d at 239)); *SourceOne Dental, Inc. v. Patterson Cos.*, 310 F. Supp. 3d 346, 368 (E.D.N.Y. 2018) (finding that the plaintiff "demonstrated a . . . future contractual relationship" where it produced evidence that: (1) "it had a reasonable assurance that" at least two dental associations "would have endorsed" the plaintiff "but for [the] defendants' interference"; and (2) a dental association "dropped its endorsement of [the plaintiff] because of pressure from [the] defendants and related pressure from [the dental association's] members"); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 524 (S.D.N.Y. 2015) (finding a genuine issue of fact regarding the existence of a prospective promotion where an employee was not considered for a promotion as a result of allegations made against him by a party), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015); *Krasnyi Oktyabr, Inc.*

*v. Trilini Imps.*, 578 F. Supp. 2d 455, 472 (E.D.N.Y. 2008) (granting the defendant's motion for summary judgment because the plaintiff failed to "present any specific instance of a prospective client whose relations were interfered with by defendants").

Because Plaintiff fails to establish a genuine issue of material fact as to whether Defendants interfered with prospective business relations, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's tortious interference with prospective business relations claim.

**6. Breach of fiduciary duty claim**

Defendants first argue that the Court should grant their motion for summary judgment on Plaintiff's claim for breach of fiduciary duty because Plaintiff's claim is duplicative of its contract claims for (1) breach of the Non-Compete and Non-Solicitation Agreement and (2) breach of the oral agreement. (Defs.' Mem. 20.) Second, Defendants argue that they did not have a fiduciary duty to Plaintiff because they did not make any decisions for Plaintiff. (*Id.* at 19–20.)

Plaintiff argues that Defendants had a fiduciary duty because they were agents and "conducted critical business" for Plaintiff, therefore, Defendants' status as independent contractors "does not negate the fiduciary character of the relationship." (Pl.'s Opp'n 17.)

To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Tesla v. Pelinkovic*, No. 25-2246, 2026 WL 979940, at *1 n.1 (2d Cir. Apr. 13, 2026) (summary order) (quoting *Nextel Commc'ns*, 660 F.3d at 138); *Blanton v. Educ. Affiliates, Inc.*, No. 21-1221, 2022 WL 1505124, at *4 (2d Cir. May 12, 2022) (summary order) (quoting same); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (quoting same).

The Court grants Defendants' motion for summary judgment and dismisses Plaintiff's claim for breach of fiduciary duty. Plaintiff alleges that Defendants breached their fiduciary duty by (1) selling competing products to Plaintiff's customers and misappropriating Plaintiff's trade secrets, (Compl. ¶ 164), which Plaintiff alleges to be the basis for its breach of the Non-Compete and Non-Solicitation Agreement claim and (2) "refusing to write to customers and require them to pay for and take delivery of purchases," (*id.*), which Plaintiff also alleges to be the basis for its breach of the oral argument to sell unsold inventory claim. Because Plaintiff's breach of fiduciary duty claim arises from the Non-Compete and Non-Solicitation Agreement and the oral agreement to sell unsold inventory, it is duplicative of the claims for breach of the Non-Compete and Non-Solicitation Agreement and the oral agreement to sell unsold inventory. *See Jones v. Wells Fargo Bank*, No. 24-CV-3013, 2025 WL 959022, at *5 (E.D.N.Y. Jan. 22, 2025) ("Where 'a breach of fiduciary duty claim indeed arises from the duties imposed by [a contract], the claim is duplicative of the breach of contract claim, and is . . . subject to dismissal.'" (alterations in original) (quoting *Res. Mine, Inc. v. Gravity Microsystem LLC*, No. 09-CV-573, 2020 WL 7024379, at *5 (E.D.N.Y. Nov. 30, 2020))). Plaintiff's claims are duplicative because (1) "they arise from the same facts" as the breach of the Non-Compete and Non-Solicitation Agreement claim and the breach of oral agreement to sell unsold inventory and (2) "do not allege distinct damages" arising from the Non-Compete and Non-Solicitation Agreement and the breach of the oral agreement to sell unsold inventory. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *see Medequa LLC v. O'Neill & Partners LLC*, No. 21-CV-6135, 2022 WL 3227814, at *6 (S.D.N.Y. Aug. 10, 2022) (stating that a breach of fiduciary duty claim is duplicative of a breach of contract claim where it is "'premised upon the same facts and seek[s]

the same damages' as the breach of contract claim" (alteration in original) (quoting *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013))).

Plaintiff argues that its fiduciary duty claim is not duplicative because it "addresses some acts not subject to the parties' Non-Compete [and Non-Solicitation] Agreement." (Pl.'s Opp'n 18.) For example, "acts regarding unsold inventory and certain confidential information." (*Id.*) However, these are duplicative of the contract claims because: (1) as discussed above and *supra* Section II.c.ii.4, Plaintiff claims a breach of oral agreement as to the "unsold inventory"; and (2) as discussed *supra* Section II.c.ii.3, Plaintiff claims a breach of contract as to "certain confidential information." *See Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co.*, No. 24-CV-2412, 2026 WL 572941, at *6 (S.D.N.Y. Feb. 28, 2026) ("[The p]laintiff's allegations relating to the breach of fiduciary duty claim are identical to the breach of contract claim with respect to 'the nature of the injury, how the injury occurred, and the harm it caused[,]' rendering the fiduciary duty claim duplicative." (second alteration in original) (citation omitted)); *Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 100 (E.D.N.Y. 2025) ("Because [the defendants] did not violate any duty independent of the contract, [the p]laintiffs' breach of fiduciary duty claim, which stems from the same set of facts as their breach of contract claim, is duplicative of their breach of contract claim."), *aff'd*, No. 25-2313, 2026 WL 1145891 (2d Cir. Apr. 28, 2026) (summary order); *Jones*, 2025 WL 959022, at *5 (concluding that the plaintiff's breach of fiduciary duty claim is duplicative of his contract claim because both claims arise from the same contractual relationship and the plaintiff "alleges no facts to establish a fiduciary relationship independent of the duties created by the alleged contract"); *O'Neill & Partners*, 2022 WL 3227814, at *6 (dismissing, on summary judgment, the plaintiff's breach of fiduciary claims because the "claims for breach of contract and breach of fiduciary duty are duplicative of

one another" (quoting *N. Shipping Funds I*, 921 F. Supp. 2d at 106)); *Res. Mine*, 2020 WL 7024379, at *5 (dismissing the plaintiff's breach of fiduciary duty claim where "[the p]laintiffs failed to demonstrate the existence of a fiduciary relationship between [the p]laintiffs and [the defendant] that is separate and apart from any duties created by contract"); *2497 Realty Corp. v. Fuertes*, 223 N.Y.S.3d 7, 12 (App. Div. 2024) (concluding that the breach of fiduciary duty claim is duplicative of the contract claim where the plaintiff "alleges that [the] defendants had a duty to distribute settlement proceeds in accordance with the provisions of the contract and seeks the same damages as the contract claim").

Because Plaintiff's breach of fiduciary duty claim is duplicative of the claim for breach of the Non-Compete and Non-Solicitation Agreement, and the alleged oral agreement, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's breach of fiduciary duty claim.

**7. Negligence claim**

Defendants argue that the Court should grant their motion for summary judgment on Plaintiff's claim for negligence because, under New York law, "negligent performance of a contract [is not] a valid cause of action." (Defs.' Mem. 20 (quoting *Verizon N.Y., Inc. v. ECSM Util. Contractors, Inc.*, 935 N.Y.S.2d 766, 767 (App. Div. 2011)).)

Plaintiff argues that it is "not prohibited from seeking recovery for negligence alongside its contract claim so long as there is a 'legal duty independent of contract,'" (Pl.'s Opp'n 18 (quoting *Joseph v. David M. Schwarz/Architectural Servs., P.C.*, 957 F. Supp. 1334, 1339 (S.D.N.Y. 1997))), and argues that its negligence claim concerns "conduct not governed by the contract, including conduct regarding unsold inventory," (*id.*).

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)); *see also Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability [for a negligence claim] under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach." (citing *Solomon ex rel. Solomon v. City of New York*, 499 N.Y.S.2d 392, 392 (1985))).

However, "under New York law, 'claims based on negligent or grossly negligent performance of a contract are not cognizable.'" *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 19 (2d Cir. 2014) (quoting *Pacnet Network Ltd. v. KDDI Corp.*, 912 N.Y.S.2d 178, 180 (App. Div. 2010)); *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 601 (S.D.N.Y. 2017) (quoting same); *see Tsurenko v. WTA Tour, Inc.*, No. 24-CV-8518, 2026 WL 820629, at *9 (S.D.N.Y. Mar. 25, 2026) ("Under New York law, 'no cause of action exists for negligent performance of a contract[,]' so 'where a cause of action for negligence . . . allege[s] no more than that [the] plaintiffs were injured by [the] defendant's actions with respect to [an] alleged contract, that cause of action should [be] dismissed[.]'" (fourth and fifth alterations added) (quoting *Singh v. PGA Tour, Inc.*, 992 N.Y.S.2d 161, 161 (Sup. Ct. 2014))); *Sterling Select II Advisory, LLC v. Argus Info. & Advisory Servs., Inc.*, No. 23-CV-2939, 2026 WL 734047, at *20 (S.D.N.Y. Mar. 16, 2026) ("[C]laims based on negligent or grossly negligent performance of a contract are not cognizable[.]" (quoting *Hadami*, 272 F. Supp. 3d at 601)), *reconsideration denied*, 2026 WL 2199730 (S.D.N.Y. July 30, 2026).

The Court grants Defendants' motion for summary judgment and dismisses Plaintiff's negligence claim because it is based on negligence performance of the (1) Non-Compete and Non-Solicitation Agreement and (2) the alleged oral agreement to sell unsold inventory. *See Hadami*, 272 F. Supp. 3d at 601 (concluding that the plaintiff's negligence claim fails where the duties were defined by oral and written contracts); *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 239 (S.D.N.Y. 2011) (granting summary judgment on negligence claim where the plaintiff failed to "establish the existence of a duty owed by [the defendant] independent of any contractual obligations"), *aff'd*, 503 F. App'x 51 (2d Cir. 2012); *Norman v. Trans World Airlines, Inc.*, No. 98-CV-7419, 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000) (granting summary judgment on negligence claim where the plaintiff failed to "articulat[e] [ ] an actionable duty sounding in negligence rather than in contract"); *ABL Advisor LLC v. Peck*, 49 N.Y.S.3d 35, 37 (App. Div. 2017) ("The gross negligence claim should have been dismissed as duplicative of the breach of contract claim.").

Plaintiff argues that its negligence claim survives because its claims "conduct not governed by the contract, including conduct regarding unsold inventory." (Pl.'s Opp'n 18.) However, as discussed *supra* Section II.c.ii.4, Plaintiff claims a breach of oral agreement as to the "unsold inventory." (*Id.*) Plaintiff does not otherwise proffer any evidence regarding any additional conduct that is independent of Defendants' alleged contractual duties, and the Court therefore dismisses Plaintiff's negligence claim.

**8. Faithless servant claim**

Defendants argue that the Court should grant their motion for summary judgment on Plaintiff's claim for faithless servant because the faithless servant doctrine is inapplicable, as they are independent contractors who "have no agency or employment relationship with"

Plaintiff. (Defs.' Mem. 20 (quoting *Fed. Ins. Co. v. Mertz*, No. 12-CV-1529, 2015 WL 5769945, at *5 (S.D.N.Y. Sep. 29, 2015)).)

Plaintiff argues that the parties had a "paradigmatic agency relationship," (Pl.'s Opp'n 19), and "the usual 'agent' is generally an independent contractor as well," (*id.* (quoting *In re Neptune World Wide Moving, Inc.*, 99 B.R. 584, 588 (Bankr. S.D.N.Y. 1989))).

Under the faithless servant doctrine, "[a]n agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010) (quoting *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200 (2d Cir. 2003)); *Melo v. Milagro Grocery Corp.*, No. 21-CV-4438, 2026 WL 366639, at *5, n.7 (E.D.N.Y. Feb. 10, 2026) (quoting same); *Robinson v. De Niro*, 739 F. Supp. 3d 33, 121 (S.D.N.Y. 2023) (quoting *CBRE, Inc. v. Pace Gallery of N.Y., Inc.*, No. 17-CV-2452, 2021 WL 1198644, at *11 (S.D.N.Y. Mar. 30, 2021)). "When a defendant is found liable under the faithless servant doctrine, a plaintiff is entitled to recover some amount of that defendant's compensation." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237 (2d Cir. 2020); *see also Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880, 2021 WL 102651, at *3 (S.D.N.Y. Jan. 12, 2021) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." (quoting *Phansalkar*, 344 F.3d at 200)); *Ciulla v. Xerox Corp.*, 136 N.Y.S.3d 696, 696 (Sup. Ct. 2021) (stating that an employee who is liable under the faithless servant doctrine is not entitled to recovery of salary or commission).

The faithless servant doctrine is typically applied to the employer-employee relationship. *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649, 2025 WL 1774171, at *24

(S.D.N.Y. Apr. 18, 2025), *report and recommendation adopted*, 2025 WL 4477153 (S.D.N.Y. May 23, 2025). However, "the terms 'independent contractor' and 'agent' are not mutually exclusive," therefore, "'an independent contractor may also be an agent' if the contractor is subject to the principal's control." *Burrell v. Sowers*, No. 22-2687, 2023 WL 7320867, at *2 (2d Cir. Nov. 7, 2023) (summary order) (quoting *Marmolejo v. N.Y.C. Sch. Constr. Auth.*, 761 N.Y.S.2d 772, 775 (Sup. Ct. 2003))); *see Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316, 328 (S.D.N.Y. 2024) ("[F]or an independent contractor to have a fiduciary relationship to an employer, it must be shown that the relationship was akin to an employer-employee relationship." (citation omitted)); *Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16-CV-5211, 2018 WL 3148357, at *9–10 (S.D.N.Y. June 27, 2018) ("But 'it is only colloquially that the terms independent contractor and agent are necessarily distinct.' . . . The Second Circuit has long held that such a relationship — *i.e.*, that between a manufacturer and a sales representative — gives rise to a fiduciary duty of loyalty." (quoting *CBS Inc. v. Stokeley-Van Camp, Inc.*, 522 F.2d 369, 375 n.14 (2d Cir. 1975))); *Gluco Perfect, LLC v. Perfect Gluco Prods., Inc.*, No. 14-CV-1678, 2014 WL 4966102, at *22 (E.D.N.Y. Oct. 3, 2014) ("An independent contractor may also be considered a fiduciary where the definition of a fiduciary is met."); *Smith v. Ryder*, 203 N.Y.S.3d 897, 899 (Sup. Ct. 2024) ("[The defendant's] status depends on who controlled 'the method and means by which [he did his] work.'" (second alteration in original) (quoting *D'Allaird v. Markline Sales, Inc.*, 962 N.Y.S.2d 730, 732 (App. Div. 2013))).

When viewing the evidence in Plaintiff's favor, there is a triable issue as to whether Defendants were agents of Plaintiff. *See Supreme Showroom*, 2018 WL 3148357, at *8 ("The existence of an agency relationship is a mixed question of law and fact that should generally be

decided by a jury." (quoting *Samba Enters., LLC v. iMesh, Inc.*, No. 06-CV-7660, 2009 WL 705537, at *7 (S.D.N.Y. Mar. 19, 2009))), *aff'd*, 390 F. App'x 55 (2d Cir. 2010); *Ryder*, 203 N.Y.S.3d at 899 ("[T]he question of control is generally a question of fact [for the jury]." (alterations in original) (quoting *Northacker v. Cnty. of Ulster*, 181 N.Y.S.3d 709, 709 (App. Div. 2022))). The record shows a triable issue as to whether the parties considered, at the very least, that Maierhoffer was an employee during the time he was Plaintiff's sales manager. Defendants argue throughout their briefing that Maierhoffer was employed by Plaintiff as sales manager, but Plaintiff repeatedly disputes Defendants' use of employment-related terms when discussing Maierhoffer's role as Plaintiff's sales manager, (*see generally* Pl.'s 56.1 Resp.),[26] and the Non-Compete and Non-Solicitation Agreement stated that it is "*not* a contract of employment" and "[n]either [Defendants] nor [Plaintiff] are obligated to any specific term of employment." (Non-Compete and Non-Solicitation Agreement ¶ 2.) However, the parties describe Maierhoffer as an employee during his role as sales manager. For example, as sales manager, Maierhoffer received business cards identifying him as Plaintiff's employee, (*see* Feb. 2019 Resignation Ltr. and Response 3 (stating in response to Maierhoffer's resignation letter, "please ensure that your company business cards, identifying you as [Plaintiff's] employee, are returned . . . .").) Furthermore, Maierhoffer testified at his deposition that, in February of 2019, he voluntarily terminated his relationship with Plaintiff as an "employee." (Maierhoffer Dep. 60:1–10, 1/16/25.)

[26] In addition to Plaintiff's briefings disclaiming an employment relationship, Zapf testified at his deposition that Maierhoffer was never paid through payroll when he was Plaintiff's sales manager; instead, Maierhoffer was "paid through a 1099 process," which was the same process for brokers. (Zapf Dep. 14:18–22.) Rabiea also testified in his deposition that he believed the bid process "was in [Maierhoffer's] hands" because "[h]e had the relationship with the customers," which could be construed as Plaintiff exhibiting limited control over Maierhoffer's decisions. (Rabiea Dep. 16:11–16, 12/17/24.)

The record also demonstrates a triable issue as to whether Defendants were subject to Plaintiff's control, and, therefore, whether Defendants were agents of Plaintiff. A reasonable jury could find that Defendants were subject to Plaintiff's control because, for example: (1) the Non-Compete and Non-Solicitation Agreement prohibited Defendants from competitive sales; (2) as sales manager, Plaintiff expected Maierhoffer to "dedicate at least 80% of his time" to Plaintiff, (Offer; *see* Zapf Dep. 15:1–8); and (3) following his resignation as sales manager, Zapf stated that it would "begin the process of account analysis to determine which, if any, accounts we wish [Defendants] to handle for us," (Feb. 2019 Resignation Ltr. and Response 3).

Because Plaintiff establishes a genuine issue of material fact as to whether Defendants were agents of Plaintiff, the Court denies Defendants' motion for summary judgment as to Plaintiff's faithless servant claim.

**9. Unjust enrichment claim**

Defendants argue that the Court should grant their motion for summary judgment as to Plaintiff's unjust enrichment claim because it is "barred where the parties are operating under a contractual relationship." (Defs.' Mem. 21–22 (citing *PKO Television, Ltd. v. Time Life Films, Inc.*, 564 N.Y.S.2d 434, 434 (App. Div. 1991)).)

Plaintiff argues that its unjust enrichment claim "can coincide with a contract claim when there are disputes about a contract's applicability or its terms."[27] (Pl.'s Opp'n 19 (first citing

[27] Plaintiff provides no support for its argument that unjust enrichment claim "can coincide with a contract claim when there are disputes about a contract's applicability or its terms." (Pl.'s Opp'n 19.) While the parties dispute "a contract's applicability or its terms," (*id.*), the parties do not disclaim that the Non-Compete and Non-Solicitation Agreement was a valid enforceable contract. *See John T. Hansford Jr. DMD Bd. Certified Pediatric Dental Specialist, P.C. v. Corona 26 Dental Grp. PLLC*, No. 24-CV-725, 2025 WL 3460948, at *6 (E.D.N.Y. Aug. 8, 2025) (concluding that the plaintiffs' unjust enrichment claim was not precluded where the plaintiffs did not allege that there was a valid enforceable contract).

*Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 887 (Sup. Ct. 2022); and then citing *Milherst Constr., Inc. v. Natale Bldg. Corp.*, 193 N.Y.S.3d 539 (App. Div. 2023)).) Second, Plaintiff seeks to "modify its original theory of relief stated in [the] [C]omplaint based on newly discovered evidence." (Pl.'s Opp'n 20 (citing *Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, No. 19-CV-3284, 2022 WL 4651667 (E.D.N.Y. Sep. 29, 2022)).) In support, Plaintiff contends that discovery "revealed far more substantial unjust enrichment in the form of commissions Defendants received" from Plaintiff's competitors.[28] (*Id.*)

"An unjust-enrichment claim under New York law requires the plaintiff to show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Delshah 60 Ninth*, 175 F.4th at 200 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)); *Courchevel 1850 LLC v. Wisdom Equities LLC*, 846 F. App'x 33, 36 (2d Cir. 2021) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,*

[28] Plaintiff appears to modify its unjust enrichment claim. While the Complaint alleges unjust enrichment arising from hand-sanitizer-related commissions, Plaintiff argues in its opposition that its unjust enrichment claim arises from commissions Defendants received "from [Plaintiff's] competitors for selling competing products." (Pl.'s Opp'n 19.) Defendants do not oppose Plaintiff's argument in their reply, and therefore, Defendants are deemed to have conceded this point. *See Chung v. Royal Care, Inc.*, No. 23-CV-7962, 2025 WL 1029432, at *10 (E.D.N.Y. Jan. 8, 2025) ("When a party's memorandum of law does not respond to an adversary's argument, the party 'effectively concedes [the] arguments by his failure to respond to them.'" (alteration in original) (quoting *Felske v. Hirchmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))), *report and recommendation adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025); *Lion-Aire Corp. v. Lion Air Installation, Inc.*, 747 F. Supp. 3d 488, 514 n.7 (E.D.N.Y. 2024) (concluding that the plaintiff conceded an issue where it failed to oppose it in its reply). The Court therefore considers Plaintiff's unjust enrichment claim as arising from Defendants' commission payments by third parties.

*Inc.*, 448 F.3d 573, 586 (2d Cir. 2006))); *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 70 (2d Cir. 2017) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). An unjust enrichment claim "may be premised on deceptive conduct." *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020); *see also Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004) ("[The] plaintiffs' allegations that [the defendant's] deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment."). "However, 'unjust enrichment is not a catchall cause of action to be used when others fail.'" *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 248 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020) (same). "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Barton*, 535 F. Supp. 3d at 248–49 (quoting *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020)). "[A] plaintiff may not 'seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.'" *Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*, 183 F.4th 78, 99 (2d Cir. 2026) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)); *Delshah 60 Ninth*, 175 F.4th at 200 ("Quasi-contract claims like unjust enrichment, however, 'are ordinarily precluded if a valid and enforceable written contract . . . governs the relevant subject matter.'" (alteration in original) (quoting *Goldberg v. Pace Univ.*, 88 F.4th 204, 214 (2d Cir. 2023))).

The Court grants Defendants' motion for summary judgment and dismisses Plaintiff's unjust enrichment claim because it arises from the Non-Compete and Non-Solicitation

Agreement and is duplicative of the breach of the Non-Compete and Non-Solicitation Agreement claim. *See Delshah 60 Ninth*, 175 F.4th at 200 ("[A]n unjust[-]enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (second alteration in original) (quoting *Corsello*, 944 N.Y.S.2d at 790)); *John T. Hansford Jr. DMD Bd. Certified Pediatric Dental Specialist, P.C. v. Corona 26 Dental Grp. PLLC*, No. 24-CV-725, 2025 WL 3460948, at *6 (E.D.N.Y. Aug. 8, 2025) ("[The p]laintiffs may not recover under quantum meruit or unjust enrichment if there is a valid enforceable contract.").

Plaintiff's unjust enrichment claim arises from commissions Defendants received "from [Plaintiff]'s competitors for selling competing products." (Pl.'s Opp'n 19.) The claim therefore arises from Defendants' alleged breach of the Non-Compete and Non-Solicitation Agreement, as Defendants would have received such commissions by breaching the Non-Compete and Non-Solicitation Agreement, and unjust enrichment is not an available remedy for any alleged damages arising from the Non-Compete and Non-Solicitation Agreement. *See One World Filter Corp. v. Koslow Techs. Corp.*, No. 21-CV-10769, 2025 WL 2720963, at *12 (S.D.N.Y. Sep. 24, 2025) ("Under New York law, unjust enrichment is a cause of action available when there is no contract."), *appeal dismissed*¸ No. 25-2697 (2d. Cir. Mar. 19, 2026); *In re Christenson*, 667 B.R. 770, 790 (Bankr. S.D.N.Y. 2025) (granting summary judgment to the defendants where the plaintiff's unjust enrichment claims duplicated the fraudulent transfer claims); *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 87 (E.D.N.Y. 2025) ("In New York, unjust enrichment is an equitable remedy available in cases where there is no contract between the parties."), *adhered to in part on reconsideration*, No. 23-CV-6188, 2025 WL 2178194 (E.D.N.Y. Aug. 1, 2025), and *motion to certify appeal denied*, 2026 WL 130912 (E.D.N.Y. Jan. 19, 2026); *Forework, LLC v. Cull*, No. 22-CV-547, 2023 WL 2931845, at *8 (N.D.N.Y. Apr. 13, 2023) ("Under New York

Case 2:21-cv-01619-KMK-ARL Document 153 Filed 10/07/26 Page 92 of 100 PageID #: 3652

law, there can be no cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties."); *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 318 (N.D.N.Y. 2022) ("[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (quoting *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 419–20 (N.D.N.Y. 2020))); *In re Signature Apparel Grp. LLC*, No. 09-BR-15378, 2015 WL 1009452, at *14 (Bankr. S.D.N.Y. Mar. 4, 2015) (dismissing, on summary judgment, unjust enrichment claim where it "represented a duplicative, 'catchall' cause of action asserted in case the [p]laintiff's primary claims fail").

Because Plaintiff's negligence claim is duplicative of the claim for breach of the Non-Compete and Non-Solicitation Agreement, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's negligence claim.

**iii. Alter ego claim**

Defendants argue that the Court should grant their motion for summary judgment dismissing all claims against Defendants because there is not sufficient evidence to conclude that Mustang and Maierhoffer are alter egos of each other, and therefore, Plaintiff fails to distinguish claims between Mustang and Maierhoffer. Defendants argue that Mustang and Maierhoffer are not alter egos because: (1) the Complaint does not allege facts "establishing either domination or fraud"; (2) "Defendants have presented evidence that Mustang is a legitimate business that has operated for nearly twenty (20) years"; and (3) Plaintiff "suffered no harm as a result of Mustang's corporate form or Maierhoffer's alleged mismanagement of same." (Defs.' Mem. 22–23.)

Plaintiff argues that a "reasonable trier of fact could find that [Mustang and Maierhoffer] are alter egos of one another" because: (1) Maierhoffer does all of Mustang's work, working out

of his house, which is paid for by Mustang; (2) Maierhoffer "commingled his personal and family assets with Mustang's, using corporate funds to pay for personal and family expenses"; and (3) "[m]oney destined for Mustang was sometimes paid to Maierhoffer or family members." (Pl.'s Opp'n 22.) Plaintiff also contends that it is not required to show that Mustang was (1) formed to effect fraud or (2) used to commit fraud because "the corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual . . . that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego." (*Id.* at 23 (alteration in original) (emphasis omitted) (quoting *Goldberg v. KOSL Bldg. Grp., LLC*, 231 N.Y.S.3d 531, 531 (App. Div. 2025)).)

"Alter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *OOO "Garant-S" v. Empire United Lines Co.*, 557 F. App'x 40, 45 (2d Cir. 2014) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 621 F. 3d 111, 195 (2d Cir. 2010)). A party seeking to pierce the corporate veil under New York law and hold another entity or individual liable on a claim against a corporation must show: (1) the alleged alter ego "exercised complete domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *Savage v. Galaxy Media & Mktg. Corp.*, 526 F. App'x 102, 104 n.2 (2d Cir. 2013) ("To pierce the corporate veil and hold individuals or other entities liable on claims against a corporation, New York . . . require[s] a showing that such entity has

exercised influence or domination over the corporation such that the entity has effectuated a fraud or injustice."). Courts consider ten equitable factors in determining whether the first requirement — domination — has been met. They are:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like[;] (2) inadequate capitalization[;] (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes[;] (4) overlap in ownership, officers, directors, and personnel[;] (5) common office space, address and telephone numbers of corporate entities[;] (6) the amount of business discretion displayed by the allegedly dominated corporation[;] (7) whether the related corporations deal with the dominated corporation at arms length[;] (8) whether the corporations are treated as independent profit centers[;] (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group[;] and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S. Inc.*, 933 F.2d 131, 139 (2d. Cir. 1991)); *Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co.*, 799 F. Supp. 3d 195, 244 (S.D.N.Y. 2025) (quoting same); *United States ex rel. Taylor v. GMI USA Corp.*, 774 F. Supp. 3d 645, 670 (S.D.N.Y. 2025) (quoting same). If the domination requirement is met, the plaintiff must then fulfill the second requirement by showing (1) "the existence of a wrongful or unjust act toward that party," and (2) that "the act caused the party's harm." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 465 (S.D.N.Y. 2005). "[A] plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness." *NetJets Aviation*, 537 F.3d at 176 (citation and internal quotation marks omitted); *JSC Foreign Econ. Ass'n Technostroyexport*, 386 F. Supp. 2d at 465 ("The party seeking to pierce the corporate veil

must establish that the owners of the corporation, through their dominance of the corporation, 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene.'" (quoting *Morris v. N.Y. Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993))); *see also MAG Portfolio Consult*, 268 F.3d at 64 ("Without a finding that the domination occurred for the purpose of committing a wrong, the second element of a veil-piercing analysis has not been met.").

When viewing the evidence in Plaintiff's favor, the Court finds that Defendants are alter egos because (1) Maierhoffer exercised influence or domination over Mustang and (2) contrary to Defendants' argument, Plaintiff is not required to show fraud to establish alter ego liability, as Plaintiff has demonstrated harm.

First, Plaintiff has proffered evidence of domination because Mustang and Maierhoffer: (1) intermingled funds; (2) overlapped in "ownership, officers, directors, and personnel"; and (3) shared a "common office space, address and telephone number[]." *See City View Blinds of N.Y., Inc. v. Trs. of N.Y.C., Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, No. 21-1037, 2022 WL 1448205, at *3 (2d Cir. May 9, 2022) (summary order) (affirming alter ego determination where the defendant-owner failed to address allegations that he and the defendant-corporation (1) "shared a place of business," (2) "formerly shared a common address," (3) "shared the same telephone number," and (4) completed financial transfers between each other).

Regarding intermingled funds, Maierhoffer testified at his deposition that (1) [redacted] (Maierhoffer Dep. 191:22–25, 10/14/22, annexed to Weisbrod Opp'n Decl. as Ex. 1 and appended in Pl.'s 56.1 Resp. 64–80), including using Mustang's money to pay for [redacted] *id.* at 192:23–193:4), and (2) he would

"most likely" [redacted], (*id.* at 193:5–9). Courts have found alter ego liability where defendants have, *inter alia*, intermingled funds. *See United States v. LabQ Clinical Diagnostics, LLC*, No. 22-CV-751, 2026 WL 787460, at *21 (S.D.N.Y. Mar. 20, 2026) (determining that the defendants were alter egos where, *inter alia*, they intermingled funds and used the same address); *John Wiley & Sons, Inc. v. Nice Glob. LLC*, No. 25-CV-2662, 2026 WL 880403, at *7 (S.D.N.Y. Mar. 31, 2026) ("[T]he intermingling of corporate assets itself can support an allegation of alter ego liability where . . . the dominating corporation is alleged to have taken funds properly belonging to the dominated corporation.") (collecting cases); *Thomas Indus., Inc. v. City of Bristol*, 336 F. Supp. 3d 28, 34 (D. Conn. 2018) (determining, on summary judgment, the defendants were alter egos where, *inter alia*, they were located at the same address, used the same phone number, and there was an intermingling of funds); *In re Flutie N.Y. Corp.*, 310 B.R. 31, 60 (Bankr. S.D.N.Y. 2004) (finding alter ego liability where, *inter alia*, the defendant-owner used corporate funds for his own personal use).

As to overlap in "ownership, officers, directors, and personnel," and sharing of office space, address and telephone number, Maierhoffer testified that he is the sole principal of Mustang, (Maierhoffer Dep. 125:10–15, 1/16/25), and that (1) Mustang's listed address and office location is [redacted] (Maierhoffer Dep. 53:11–18, 10/14/22); (2) other than [redacted] Mustang has not been located in a different house or an office, (*id.* at 189:17–190:1); and (3) Mustang does not have a landline and he uses [redacted] for Mustang, (*id.* at 190:14–191:3).

Defendants incorrectly assert that Plaintiff must show fraud to establish alter ego liability. A plaintiff is not required to demonstrate fraud, as "[a] court may pierce the corporate veil 'when the corporation has been so dominated by an individual or another corporation and its separate

identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'" *PowX Inc. v. Performance Sols., LLC*, No. 24-CV-1389, 2026 WL 592251, at *10 (S.D.N.Y. Mar. 3, 2026) (quoting *Miramax Film Corp. v. Abraham*, No. 01-CV-5202, 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003)); *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769, 2012 WL 4511372, at *8 (E.D.N.Y. Sep. 28, 2012) (quoting *Fernbach, LLC v. Calleo*, 939 N.Y.S.2d 501, 503 (App. Div. 2012)).[29]

[29] It is also possible that Plaintiff would be able to show "fraud" by Defendants because it has established an issue of genuine fact as to whether Defendants misappropriated its trade secrets. *See John Wiley & Sons, Inc. v. Nice Glob. LLC*, No. 25-CV-2662, 2026 WL 880403, at *8 (S.D.N.Y. Mar. 31, 2026) ("Th[e] [fraud] prong 'can be satisfied either by showing outright fraud, or another type of wrong, such as a breach of a legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights.'" (quoting *Telenor Mobile Commc'ns A.S. v. Storm LLC*, 587 F. Supp. 2d 594, 620 (S.D.N.Y. 2008))); *Giarla v. Coca-Cola Co.*, No. 17-CV-359, 2021 WL 1110397, at *5 (W.D.N.Y. Mar. 23, 2021) ("The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." (quoting *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 142 (1993))); *HRA Grp. Holdings Ltd. v. Mark's Majestic Diamonds, Inc.*, No. 13-CV-8791, 2015 WL 5316404, at *10 (S.D.N.Y. Sep. 11, 2015) ("[T]he [p]laintiffs are not required to prove fraud, but may satisfy this prong of their alter ego claim through evidence that [the individual's] domination of the corporate defendants resulted in 'wrongdoing or some act of injustice.'" (quoting *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 578 (S.D.N.Y. 2013))); *Kasper Glob. Collection & Brokers, Inc.*, 952 F. Supp. 2d at 578 ("Under New York law, evidence of fraud or wrongdoing or some act of injustice is sufficient to satisfy the second prong of the test for piercing the corporate veil."); *see also Cohen v. Cohen*, 250 N.Y.S.3d 482, 488 (App. Div. 2026) ("[W]hile fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice." (quoting *Baby Phat Holding Co. v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (App. Div. 2014))); *Sweeney v. Waitz*, 114 N.Y.S.3d 830, 833 (Sup. Ct. 2019) ("The mere claim that the corporation was completely dominated by the defendant, or conclusory assertions that the corporation acted as his 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil. Some showing of a wrongful or unjust act toward the plaintiff is required.") (collecting cases).

Because Plaintiff establishes that Defendants are alter egos, the Court denies Defendants' motion for summary judgment as to Plaintiff's alter ego allegations and finds that Plaintiff has established that Defendants are alter egos.[30]

**d. Rule 11 sanctions**

Plaintiff argues that the Court should impose sanctions under Rule 11 in addition to sanctions under Rule 37, as discussed *supra* footnote 24, because Defendants "made a frivolous *res judicata* argument" in support of its motion to dismiss all claims and subsequently "refused to withdraw their frivolous arguments even after the Vacatur nullified the *res judicata* arguments." (Pl.'s Sanctions Mem. 4.)

Defendants argue that their *res judicata* argument is not frivolous because the state court had no authority to vacate its dismissal of the state court action, (Defs.' Sanctions Opp'n 17), and Plaintiff offers no legal support for its sanctions motion, (*id.* at 16–17).

The Court denies Plaintiff's motion for Rule 11 sanctions. First, while Defendants' invocation of *res judicata* is unavailing, Plaintiff has not shown that Defendants advanced this argument in bad faith, and "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *See Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011); *Tounkara v. Republic of Senegal*, No. 21-CV-8027, 2022 WL 17826422, at *13 (S.D.N.Y. Dec. 20, 2022) (denying motion for sanctions where there was no showing that the arguments were advanced in bad faith), *report and recommendation adopted*, 2023 WL 2692434 (S.D.N.Y. Mar. 29, 2023). Second, Defendants raised alterative arguments in support of their motion for summary

[30] Because the Court finds that Mustang and Maierhoffer are alter egos, the Court denies Defendants' motion for summary judgment as to whether they are and declines to address Defendants' argument that the Court should grant Defendants summary judgment because the Complaint fails to distinguish claims against each Defendant. (*See* Defs.' Mem. 23.)

judgment, which included that this action should be dismissed because the evidence does not support Plaintiff's claims. As Plaintiff has failed to sustain several of its underlying claims — tortious interference with prospective business relations, breach of fiduciary duty, negligence, and unjust enrichment — Defendants' summary judgment motion is not frivolous. *See Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam) (holding that the district court did not abuse its discretion in denying the plaintiff's request for sanctions against the defendant where the district court dismissed the plaintiff's claims); *Bridgeton 396 Broadway Fee LLC v. Anthony T. Rinaldi LLC*, No. 20-CV-2052, 2020 WL 5983205, at *4 (S.D.N.Y. Oct. 8, 2020) (denying sanctions where the court rejected the petitioner's arguments because "sanctions are not appropriate simply because a party is incorrect"); *Colon v. Metro-N. Commuter R.R. Co.*, 242 F. Supp. 3d 65, 82 (D. Conn. 2017) ("Because [the] plaintiff has successfully defended the motion for summary judgment, [the court is] not convinced at this time that any other sanctions are appropriate."), *aff'd*, 778 F. App'x 7 (2d Cir. 2019); *Booker v. Graham*, No. 13-CV-1342, 2016 WL 11480150, at *1 (N.D.N.Y. Oct. 26, 2016) (recommending denial of the plaintiff's motion for sanctions where the court found that the defendants' summary judgment motion was appropriate), *report and recommendation adopted*, 2016 WL 7176607 (N.D.N.Y. Dec. 9, 2016), *aff'd*, 974 F.3d 101 (2d Cir. 2020); *Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2012 WL 4471602, at *7–8 (S.D.N.Y. Sep. 26, 2012) (holding that sanctions were not warranted against the defendant where the plaintiff's claims were dismissed). Because Plaintiff has not sufficiently shown that Rule 11 sanctions are warranted, the Court denies Plaintiff's motion for sanctions.

Case 2:21-cv-01629-MKB-ARL Document 153 Filed 10/07/26 Page 100 of 100 PageID #: 3660

## III. Conclusion

For the reasons discussed, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims for: (1) tortious interference with prospective business relations; (2) breach of fiduciary duty; and (3) unjust enrichment. The Court denies Defendants' motion for summary judgment as to Plaintiff's claims for: (1) misappropriation of trade secrets; (2) breach of the Non-Compete and Non-Solicitation Agreement; (3) breach of the alleged oral agreement; and (4) faithless servant. The Court also denies Defendants' motion to strike the report of and preclude testimony from Plaintiff's expert, Christopher Picone, and grants Defendants' motion to strike the report of and preclude testimony from Plaintiff's expert, Glen Balzer. Finally, the Court: (1) denies Plaintiff's Rule 37 motion *in limine* to preclude Defendants' evidence and testimony as to competitive sales; (2) denies Plaintiff's Rule 11 motion for sanctions; and (3) denies Plaintiff's request for leave to file a supplemental Rule 56.1 statement.

Dated: September 18, 2026
Brooklyn, New York

SO ORDERED:

s/MKB
MARGO K. BRODIE
United States District Judge